**GARY MUNICIPAL AIRPORT AUTHORITY, et al., Appellants–Defendants,**

v.

**Ted PETERS, Jack Slaboski, Tony Zaleski, and the Hoosier State Bank, as Trustee for Trust No. A–878, Appellees–Plaintiffs.**

No. 45A03–9103–CV–80.

Court of Appeals of Indiana, Third District.

July 13, 1991.

Rehearing Denied March 11, 1992.

Phyllis J. Senegal, Gary, for appellants-defendants.

Kathryn D. Schmidt, Burke, Murphy, Costanza & Cuppy, Merrillville, Terrance L. Smith, Smith & Debonis, East Chicago, for appellees-plaintiffs.

HOFFMAN, Judge.

Appellants-defendants Gary Municipal Airport Authority District, et al. (hereinafter referred to as GMAAD) appeal the trial court's judgment in favor of the trustee and beneficiaries of the Hoosier State Bank Trust No. A–878 (hereinafter referred to as Trust). The trial court awarded the Trust $75,000.00 in liquidated damages, $3,500.00 in appraisal costs, and $107,562.50 in attorney's fees.

The facts disclose that this case has a protracted history of litigation. GMAAD attempted to purchase certain Trust property as a part of its plan of expansion beginning in 1979. GMAAD submitted an offer to purchase the real estate for $574,-000.00. This offer was rejected by the Trust.

GMAAD, thereafter, filed an eminent domain action in Lake Superior Court to acquire the real estate. The Trust filed objections to the complaint. These objections were granted and the case was dismissed.

The Trust then filed a complaint in February 1980, alleging that GMAAD's condemnation action had caused a cloud on the title to the real estate. This slander of title action was venued to Porter County.

In 1983, GMAAD made an offer of $937,-000.00 to purchase the real estate. However, due to the fact that the Toll Road Commission had acquired a portion of the real estate, the Trust could not accept the offer.

In February 1984, the Trust filed a cause of action in the United States District Court alleging that GMAAD, acting under color of state law, had deprived the Trust of property rights in violation of 42 U.S.C. § 1983. The Trust asserted that GMAAD's action and conduct since 1979 amounted to a taking of the real estate without just compensation and without due process.

Both the Section 1983 federal suit and the state slander of title action, filed by the Trust against GMAAD, were dismissed pursuant to an agreement entered into by the Trust and GMAAD on March 1, 1985. This agreement set forth the terms and conditions under which the Trust would sell and GMAAD would purchase the real estate.

However, on September 16, 1986, the Trust filed suit against GMAAD in state court for breach of agreement. The complaint asked for specific performance or liquidated damages and attorney's fees.

The Trust filed requests for admissions to which GMAAD failed to timely respond. The Trust then filed a motion for partial summary judgment based upon those admissions, which motion was granted and judgment entered against GMAAD. This Court reversed the trial court because of its disallowance of GMAAD's request to withdraw or amend the admissions. *Gary Mun. Airport Auth. Dist. v. Peters* (1990), Ind.App., 550 N.E.2d 828 (Baker, J., dissenting).

On January 29, 1991, the day of trial, the Trust informed the court that it would pursue only liquidated damages and attorney's fees and not specific performance. After hearing the evidence and taking the matter under advisement, the trial court entered its judgment against GMAAD on February 13, 1991. The court awarded the Trust

liquidated damages of $75,000.00, appraisal costs of $3,500.00, and attorney's fees of $107,562.50. GMAAD subsequently filed this appeal.

One issue is dispositive of this appeal: whether GMAAD breached the agreement with the Trust.

The agreement in relevant portion stated that GMAAD would be provided funds through the FAA for the purchase of the real estate. Furthermore, GMAAD stated that it "shall take all such actions so as to remain eligible and qualified for Federal Funding...." However, GMAAD breached this part of the agreement. On June 13, 1986, the FAA suspended GMAAD's grant requests due to internal control weaknesses at GMAAD. The FAA had received an audit report from the Indiana State Board of Accounts for the three-year period ending December 31, 1984, which revealed internal accounting control deficiencies. GMAAD was informed that it could not receive any grant payments until the deficiencies were corrected to the satisfaction of the Indiana State Board of Accounts and the Office of the Inspector General. (The FAA lifted GMAAD's suspension in May 1989.)

Due to the internal control weaknesses at GMAAD, GMAAD did not remain eligible and qualified for federal funding as promised in the agreement. Furthermore, nothing in the agreement indicates that the parties intended to recognize a temporary suspension of benefits as an exception to a breach of agreement. There is similarly no clause in the agreement which permits the breach if GMAAD was acting in good faith or if GMAAD's actions, which constituted a breach, occurred before the actual agreement was signed.

Additionally, GMAAD claims the agreement is not binding due to mutual mistake, i.e., both parties believed that federal funding would be available. However, federal funding was available if GMAAD had not jeopardized its status with the FAA. GMAAD promised to remain eligible and qualified and it did not.

GMAAD also attempts to claim that the agreement was "subject to" federal funding since the purchase was based on GMAAD receiving funds from the FAA. Once again, the agreement clearly stated that GMAAD would remain eligible and qualified to receive the federal funding which it did not do. Therefore, GMAAD breached the agreement.

GMAAD contends that time was not of the essence in the agreement and, therefore, it should have been permitted time to remedy the internal problems and be reinstated to receive grant money from the FAA. As stated above, the agreement did not provide an exception for a temporary suspension of benefits from the FAA.

There are several arguments made by GMAAD alleging that, despite the temporary suspension of benefits, the agreement was not enforceable due to a problem with the property. It appears that there are sludge ponds and distressed areas on the real estate. GMAAD certainly was on notice of these conditions starting in 1979 when it wanted to buy the real estate. These conditions are listed in the description of the real estate. The agreement with the Trust provided for appraisers to value the property taking into account the soil condition. The appraisers submitted an appraisal on January 6, 1986 valuing the real estate at $770,000.00. GMAAD sent this appraisal to the FAA.

The EPA was also contacted regarding the real estate. On May 2, 1986, the EPA advised that the site had been investigated for possible inclusion on the National Priorities List of sites requiring remedial action to address a threat to public health, welfare and environment. However, the EPA found that:

"this site does not meet the minimum requirements for inclusion on the NPL. Thus, subject to changes in the listing requirements or changes in the site condition, the U.S. EPA no longer has interest in this site for possible CERCLA activities."

This letter was forwarded to the FAA.

On May 27, 1986, the FAA sent a letter to GMAAD informing it that the FAA

found the appraisal report acceptable "with one notable exception." The FAA found that the appraisal did not take into account an easement that had been granted to NIPSCO. The FAA agreed to participate and provide the funding minus the value of the easement. The FAA then stated:

"The appraisal report also based the value of the property on 'buildable soil conditions' and 'no abnormal soil conditions that would negate development.'

By the FAA participating in the acquisition of the subject property, it is with the understanding that the FAA will not at a later date be requested to participate in any cleanup which could reasonably be expected to have been discovered by visual inspection of the property or by chemical analysis of the soil condition."

On June 13, 1986, the FAA informed GMAAD that it was suspending GMAAD's grant due to the internal control weaknesses.

The appraisers amended their appraisal on July 3, 1986 to take into account the easement. The new appraisal valued the real estate at $759,000.00.

GMAAD asserts that, despite the temporary suspension of federal funding, the agreement is not binding due to uncertainty of price. GMAAD argues the appraisers did not compute the condition of the soil in their appraisal, thereby making the appraisal value void. As such, the agreement is not binding for lack of a certain purchase price. However, there is no evidence that GMAAD had a problem with the appraisal. GMAAD had known for several years about the sludge ponds. The appraisal was done and GMAAD submitted it for FAA approval. The FAA gave its approval. The EPA confirmed that the real estate was not on the list for CERCLA activity. GMAAD admits, in its appellate brief, the possibility that the sale might have occurred if the federal funding had not been suspended.

Even if we assume that GMAAD would have had a problem with the appraisal value, if GMAAD had not breached the agreement, the appraisers could have possibly amended the value once again to the satisfaction of all the parties. However, there was no opportunity for any amendment since GMAAD breached the agreement by having its federal funding suspended.

The trial court properly granted judgment in favor of the Trust.

Affirmed.

GARRARD and CONOVER, JJ., concur.