**Quantel CHAMBLISS, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 49S00–9908–CR–438.

Supreme Court of Indiana.

April 24, 2001.

---

Timothy J. O'Connor, O'Connor & Auersch, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Quantel Chambliss shot two store employees in a struggle after they tried to apprehend him shoplifting. In the course of affirming his convictions and sentence, we find that his handgun's serial number had been sufficiently altered to constitute a criminal offense. We also conclude that because the jury convicted him of theft, he suffered no prejudice when his lawyers did not ask the jury to be instructed on the defenses of self defense or accident.

### Background

The facts most favorable to the verdict indicate that on June 4, 1998, Defendant entered the 7–11 Grocery store on Fairfield Avenue in Indianapolis. While in the store, Defendant placed two packages of lunch meat under his coat. A store employee, John Harkins, confronted Defendant. Defendant dropped the merchandise on the floor and punched Harkins. At that point, another employee, Anthony Thompson, helped Harkins to overpower Defendant and they took him to a back room.

In the back room, the three began struggling and fighting again. Defendant then pulled out a handgun and fired it several times. Harkins was struck in the leg. Subsequently, as Defendant and Thompson were struggling with each other, Defendant shot Thompson in the chest. Defendant ran toward the front of the store, pursued by Thompson and a third store employee. Thompson then pulled out a gun and shot Defendant in the leg. Thompson collapsed and eventually died. The police found Defendant's gun in the store. An inspection revealed that the gun's serial number had been filed off.

The State charged Defendant with Murder,[1] Attempted Murder, a Class A felony,[2] Possession of a Handgun With Obliterated Serial Number, a Class C felony,[3] Theft, a Class D felony,[4] and with Carrying a Handgun Without a License, a Class A misdemeanor.[5] The jury convicted Defendant on all counts except the attempted murder, instead finding him guilty of Aggravated Battery, a Class B felony.[6] Defendant was sentenced to an aggregate executed term of 69 years in prison.

### Discussion

#### I

Defendant contends that the evidence was insufficient to convict him of (a) Pos-

1. Ind.Code § 35–42–1–1 (1998).

2. *Id.* §§ 35–41–5–1 (1993) and 35–42–1–1 (1998).

3. *Id.* § 35–47–2–18 (1993).

4. *Id.* § 35–43–4–2.

5. *Id.* § 35–47–2–1.

6. *Id.* § 35–42–2–1.5 (1998).

session of a Handgun with Altered or Obliterated Serial Number and (b) Theft.

■ In reviewing a sufficiency of the evidence claim, the Court neither reweighs the evidence nor assesses the credibility of the witnesses. *See Garland v. State,* 719 N.E.2d 1236, 1238 (Ind.1999), *reh'g denied.* We look to the evidence most favorable to the verdict and reasonable inferences drawn therefrom. *See Sanders v. State,* 704 N.E.2d 119, 123 (Ind.1999). We will affirm the conviction if there is probative evidence from which a reasonable jury could have found Defendant guilty beyond a reasonable doubt. *See Brown v. State,* 720 N.E.2d 1157, 1158 (Ind.1999).

## A

■ Defendant first challenges the sufficiency of the evidence regarding his possession of a handgun with an altered or obliterated serial number.

Indiana Code § 35–47–2–18 (1993) provides in relevant part, "[n]o person shall ... possess any handgun on which the name of the maker, model, manufacturer's serial number, or other mark of identification has been changed, altered, removed, or obliterated."

During the course of the trial, the State's firearms examiner testified that when he first inspected Defendant's weapon, the serial number was illegible. The examiner also testified that he was able to restore the serial number by smoothing the area with sandpapers and using cleaning acids.

Defendant argues that the serial number was not "obliterated," "altered," or "removed," as required by Indiana Code § 35–47–2–18, because the State's expert was able to restore the number. Defendant therefore argues that Indiana Code § 35–47–2–18 requires that the serial num-

ber be "eliminated" without a trace. Appellant's Br. at 11.

■ The primary rule in statutory construction is to ascertain and give effect to the intent of the legislature. *Bartlett v. State,* 711 N.E.2d 497, 501 (Ind.1999) (citing *Smith v. State,* 675 N.E.2d 693, 696 (Ind.1996)) (citing in turn *Freeman v. State,* 658 N.E.2d 68, 70 (Ind.1995)). "The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless otherwise indicated by statute." *Id.*

■ We believe that the legislature's use of the verbs "change," "alter," "obliterate," and "remove" indicate that its intent in enacting this statute was to criminalize any material effort to transform or obscure a handgun's serial number. Here, the State's expert testified that the gun's serial number had been "ground, filed," and had "some kind of abrasion device" applied to it. The result was that the serial number was materially transformed or obscured. This evidence is sufficient for a jury to find that the serial number on Defendant's gun was "changed, altered, removed, or obliterated."

## B

Defendant also challenges the sufficiency of the evidence supporting his theft conviction.

The theft statute, Indiana Code § 35–43–4–2 (1993), reads in relevant part, "[a] person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft." Unauthorized control refers to control that is "[w]ithout the other person's consent ... or in a manner or to an extent other than that to which the other person has consented." Ind.Code

§§ 35–43–4–1(b)(1) and 35–43–4–1(b)(2) (1993).

Defendant argues that he never exerted "unauthorized control" over the lunch meat. Harkins testified that Defendant took two packages of lunch meat and tucked them under his coat. However, Defendant argues that he was within the store when he did so, and had not passed by the cash register. Appellant's Br. at 12 (citing R. at 141.) When Harkins confronted Defendant, Defendant dropped the lunch meat on the floor. The Defendant argues that he never had unauthorized control because he didn't attempt to exit the store with the lunch meat, and he "terminated control when asked to do so." Appellants Br. at 13.

The State presented sufficient evidence from which a jury could find that Defendant exerted unauthorized control over, and therefore theft of, the lunch meat. A witness who spoke with Defendant soon after he fled from the 7–11 testified that Defendant stated that "he (Defendant) stole [lunch meat] and he got caught."

The State also presented evidence that Defendant took the meat, put it inside his jacket, and only took it out after an employee confronted him. An employee added in his testimony that there was a sign in the store that read, "do not put things in your coat pockets or in your purse."

Defendant's statement and the concealment of the lunch meat was sufficient evidence from which a jury could infer "unauthorized control," and therefore theft. See *Hartman v. State*, 164 Ind.App. 356, 359, 328 N.E.2d 445, 447 (1975) ("testimony . . . that [the defendant] was discovered near the door with a shirt he had not paid for, hidden under his jacket permits an inference that he was in the process of leaving the store, without paying for the shirt, and was exerting unauthorized control over the property. . . .").

## II

Defendant contends that the trial court failed to consider the mitigating factor of Defendant's remorse in pronouncing sentence. Appellant's Br. at 6.

When sentencing a defendant, the trial court may consider certain aggravating and mitigating circumstances. See Ind.Code § 35–38–1–7.1. The trial court is not obligated to explain why it did not find a factor to be significantly mitigating. See *Birdsong v. State*, 685 N.E.2d 42, 47 (Ind. 1997). Indiana law, however, mandates that the trial judge not ignore facts in the record that would mitigate an offense, and a failure to find mitigating circumstances that are clearly supported by the record may imply that the trial court failed to consider them properly. *Id.*

The judge explained that he found as aggravating circumstances the number of shots fired, the fact that the shots were fired in a public place where there were many people, the nature and circumstances of the crime, and Defendant's prior criminal history. The judge found Defendant's young age as a mitigating circumstance and stated that the aggravators outweighed the mitigators.

We find that the trial court did not err in disregarding Defendant's claim of remorse. At the sentencing hearing Defendant did read a note to the family of the victim.[7] Defendant's attorney also re-

---

7. Defendant's statement read in part:
   I would like to take this time out to give my deepest apologies to the family of Anthony Thompson and to John Harkins. I would like you all to know that I'm truly sorry for what happened and for what your families are going through. . . . [E]very day I truly

ferred to Defendant's remorse during the sentencing hearing. However, the court was not required to find Defendant to be remorseful or, if it did, sufficiently remorseful to warrant mitigating the sentence. There is some evidence that Defendant was remorseful, but the judge did not abuse his discretion in not recognizing it as a mitigating circumstance.

## III

■ Defendant claims that his counsel "was ineffective because he failed to tender jury instructions on defenses that were supported by the evidence." Appellant's Br. at 13. A defendant is entitled to instruction on any defense which has some foundation in the evidence. *Smith v. State,* 547 N.E.2d 817, 820 (Ind.1989). Defendant argues that his counsel should have tendered jury instructions for self defense and for accident.

■ A criminal defendant has the right to effective assistance of counsel to prepare his defense. U.S. Const. Amend. VI. To prove ineffective assistance of counsel, Defendant must prove that (1) counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Strickland v. Washington,* 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## A

Defendant argues that he presented evidence of self defense and that his counsel should have proffered a self-defense instruction.

At trial, Defendant offered the following account of the incident at the 7–11: Defendant picked up some items at the store but did not put them under his coat, and did not intend to steal them. Harkins then confronted Defendant and, after a brief exchange of words, pushed Defendant. At that time, Defendant dropped the items and swung at Harkins "for [Defendant's] protection" because he "didn't know if he was going to continue to try to put his hands on [Defendant] anymore." At that time, Thompson grabbed Defendant and the two employees were able to force Defendant to the back of the store and into a back room. In the back room, the employees threw him down on the floor and hit him when he tried to get up. When Defendant tried to get up to sit on some milk crates, Thompson and Harkins again started hitting Defendant and his gun fell out in the ensuing struggle and discharged when it hit the ground. Defendant grabbed the gun after it fired, and Harkins attempted to knock the gun out of his hand, making the gun fire again. According to Defendant, his gun fired only accidentally.

The jury was instructed that a person has the right to use reasonable force to prevent another person's escape when there is probable cause to believe the other person committed a felony. The jury was also instructed that a storekeeper has a right to detain a shoplifter. Defendant argues that the jury should have also been instructed on the defense of self defense.

■ "Self-defense is recognized as a valid justification for an otherwise criminal act." *Miller v. State,* 720 N.E.2d 696, 699 (Ind.1999). "A person is justified in using reasonable force against another

regret that because of my involvement in this incident a life is gone.

(R. at 658–59.)

person to protect himself . . . from what he reasonably believes to be the imminent use of unlawful force." Ind.Code § 35–41–3–2(a) (1993). Self defense is established if a defendant (1) was in a place where the defendant had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *See Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000); *Jordan v. State*, 656 N.E.2d 816, 817 (Ind.1995), *reh'g denied.*

■ A defendant is only entitled to instructions that are supported by the evidence. *See Sherwood v. State*, 702 N.E.2d 694, 698 (Ind.1998) *reh'g denied; Sweany v. State*, 607 N.E.2d 387, 389 (Ind.1993). The self-defense statute restricts the use of self defense, stating, "a person is not justified in using force if . . . he is committing, or is escaping after the commission of, a crime." Ind.Code § 35–41–3–2(d)(1) (1993). As a result, if Defendant committed theft, he was not entitled to a self-defense instruction here. *Cf. Mays v. State*, —— N.E.2d ——, No. 49500–0002–CR–92, Slip Op. at 5 (Mar. 13, 2001) (requiring a nexus between the two crimes for the restrictions to apply). Prior to the jury's verdict, it had not been determined whether Defendant had committed theft. Therefore, Defendant was at least arguably entitled to a self-defense instruction, but any such instruction should have been conditioned on the jury finding that Defendant acted lawfully. In such circumstances, a jury should be instructed that it may consider self defense, but only if it does not find the defendant guilty of theft.

■ The jury's determination that Defendant committed theft indicates that any self-defense instruction would have been unavailing. Defendant committed a crime by taking the lunch meat, and any actions that he took to escape may not be considered under the self-defense statute. As

such, Defendant did not suffer prejudice from defense counsel's failure to proffer a self-defense instruction; the result of the proceeding would not have been different.

## B

Defendant also argues that his counsel should have requested an instruction on the defense of accident.

■ The defense of accident excuses conduct that would otherwise be prohibited. A valid accident defense requires that: (1) The conduct must have been unintentional, or without unlawful intent or evil design on the part of the accused; (2) the act resulting in injury must not have been an unlawful act; and (3) the act must not have been done recklessly, carelessly or in wanton disregard of the consequences. *See Wrinkles v. State*, 690 N.E.2d 1156, 1161 (Ind.1997), *cert. denied*, 525 U.S. 861, 119 S.Ct. 148, 142 L.Ed.2d 121 (1998); *Case v. State*, 458 N.E.2d 223 (Ind.1984).

■ For reasons similar to those regarding the self-defense instruction, *see supra* Part III–A, we find that Defendant was not prejudiced by counsel's failure to proffer an instruction on accident. With the benefit of hindsight, we know that the jury found Defendant guilty of theft. Therefore, Defendant's attempt to escape from the store involved "unlawful intent," and defendants are not entitled to instructions on accident for actions that involved "unlawful intent." At best, Defendant would have been entitled to an accident instruction that was conditioned on the jury finding that he did not commit theft. But because he committed theft, the jury would not have been able to consider accident, and the instruction, if given, would have had no effect on the outcome of the trial.

*Conclusion*

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.