**Reginald DILLARD, Appellant (Defendant below),**

**v.**

**STATE of Indiana, Appellee (Plaintiff below).**

No. 20S00–0005–CR–301.

Supreme Court of Indiana.

Oct. 5, 2001.

Nancy A. McCaslin, Elkhart, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Janet Parsanko, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Reginald Dillard was convicted of murder for his role in killing a police informant. In affirming the conviction, we find that the trial court properly granted Defendant's request to be tried together with a co-defendant. We also find the testimony of another accomplice to be sufficiently creditworthy to support the conviction and that Defendant was not prejudiced by certain evidence initially permitted over his objection but subsequently disallowed.

### Background

The facts most favorable to the judgment indicate that on August 19, 1998, Defendant and Eddie Fredrick were hired to kill Christopher Thomas because he was acting as a police informant. Thomas was residing in a room at the Three Point Motel in Elkhart. Defendant and Fredrick used Tricia Mock as a decoy to get Thomas to open the door. Mock knocked at the door of Thomas's room and Fredrick forced himself into the room after Thomas opened the door. Thomas ran out of the hotel room but was shot near his door and fell to the ground. Mock testified that the shots came from outside the hotel room. Fredrick then stood over Thomas and fired three or four more shots into his body. Thomas died as a result of gunshot wounds to the head and chest.

Defendant and Fredrick were tried together and found guilty of murder.[1] The trial court sentenced Defendant to 65 years.

### Discussion

#### I

■■■ Defendant contends that he is entitled to a new trial because the trial court should not have granted his request to withdraw his motion for a separate trial. Appellant's Br. at 6.

Defendant and Fredrick were both charged with murder. Defendant filed a motion to be tried separately from Fredrick on January 5, 2000, five days prior to trial. The motion indicated that the State intended to call David Brownlee to testify that Fredrick confessed to committing the crime and implicated Defendant in his confession. Defendant sought separation to preserve his right to confront and cross-examine Fredrick. The trial court set the matter for hearing the following day.

On January 6, 2000, Defendant asked to withdraw his motion for a separate trial. Defendant filed a Waiver of Right to Have Separate Trial From Co–Defendant and Waiver of Conflict of Interest.[2] This document indicated the following: (a) Defendant had been advised by his attorney that he had a right to a separate jury trial and that he was making his request for a joint trial despite his attorney's advice recommending a separate trial; (b) Defendant's attorney had informed him that the state would call a "snitch" who would testify that Fredrick confessed to the crime and implicated Defendant in his confession; and (c) Defendant's attorney had advised him that he had "the right to confront and cross examine ALL witnesses against [him], including anything that [Fredrick] purportedly told any witnesses," and that if he proceeded with a joint trial with Fredrick and Fredrick exercised his right to remain silent and not testify, Defendant would "[lose his] right to confront and

---

1. Indiana Code § 35–42–1–1 (1998). Fredrick also appeals his conviction. We address his claims on appeal in a separate decision. *Fredrick v. State*, 755 N.E.2d 1078 (Ind. 2001).

2. Fredrick signed a substantially similar "Waiver." However, at no point did Fredrick seek a separate trial. *See Fredrick*, at 1080.

cross-examine him as to those statements and confessions made to the snitches...."

Indiana Code § 35–34–1–11(b) provides:

Whenever two (2) or more defendants have been joined for trial in the same indictment or information and one (1) or more defendants move for a separate trial because another defendant has made an out-of-court statement which makes reference to the moving defendant but is not admissible as evidence against him, the court shall require the prosecutor to elect:

(1) a joint trial at which the statement is not admitted into evidence;

(2) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted; or

(3) a separate trial for the moving defendant.

■ A motion for a separate trial must be made prior to the commencement of the trial.[3] Ind.Code § 35–34–1–12(a) (1998). A defendant's right to a separate trial is waived if the defendant fails to make the motion at the appropriate time. *Id.*; *Townsend v. State*, 533 N.E.2d 1215, 1225 (Ind.1989).

As a matter of statutory construction, it appears that the trial court was correct in granting Defendant's request to withdraw his motion for separate trial. Indiana Code § 35–34–1–11 requires the trial court to take action regarding separation of trials only where one party moves for a separate trial. Defendant withdrew his motion for a separate trial. This returned Defendant to the position of not having requested a separate trial. This is sufficient under the statute to waive a defendant's right to a separate trial. *See* Ind.

Code § 35–34–1–12(a); *Townsend v. State*, 533 N.E.2d at 1225.

Defendant's claim for relief, as we understand it, is not that the trial court acted contrary to the severance statute but the because his request to withdraw his motion for separate trial was not voluntary, knowing, or intelligent, the trial court should not have granted the request. While Defendant on appeal does not describe the circumstances that caused him to submit the request, it seems clear from the text of the request that it was done over the vigorous protest of his trial counsel. Given the circumstances, it would have been helpful if the trial court had held a hearing on the record on the matter.

However, we are unable to conclude from the record or the argument presented on appeal that the trial court committed reversible error in granting the request. The most that can be said in support of Defendant's claim is that the "waiver has numerous misspellings, lacks a caption, is single spaced, is not signed by counsel, has been dated by filling in a blank, and releases counsel from claims of ineffective assistance for not filing a Motion to Separate, which motion was filed the previous day." Appellant's Br. at 8. But these attributes of the request do not undermine the fact that the language of the request is quite explicit and detailed in its discussion of the risks of a joint trial. And there is nothing of record or in Defendant's argument on appeal that suggests that there was anything involuntary, i.e., coerced, about his request.

More generally, the decision by a defendant in a criminal case to be tried jointly with or separately from a co-defendant is a highly fact-sensitive strategic decision that will vary from defendant to defendant and case to case. Here there is no evidence to

---

**3.** "[E]xcept that the motion may be made before or at the close of all the evidence during trial if based upon a ground not previously known." Ind.Code § 35–34–1–12.

suggest that Defendant made anything other than a strategic decision over the protest of his counsel to be tried together with Fredrick. Absent error by the trial court in applying applicable law, he is not entitled to a new trial merely because that decision did not work out to his satisfaction.

## II

■ Defendant challenges the sufficiency of the evidence, contending that his "conviction should be overturned because it was based on inherently contradictory and dubious testimony." Appellant's Br. at 11.

Tricia Mock testified as to what happened on the night of the murder. She also testified that her testimony was inconsistent with earlier statements she had made to the police. Mock initially had told the police that she didn't know anything about the murder. Later, she told the police that Defendant and Fredrick killed Thomas, but didn't tell them that she was involved. She eventually told the police the story set forth under *Background supra*, including her involvement in the murder. During cross-examination, defense counsel questioned Mock extensively regarding her inconsistent statements. In questioning Mock, defense counsel elicited that there were motives for her to lie. Counsel attacked her credibility by pointing out errors in her statements about certain details of the crime. Throughout the cross-examination, defense counsel vigorously attacked her credibility.

■ In reviewing a sufficiency of the evidence claim, the Court neither reweighs the evidence nor assesses the credibility of the witnesses. *See Brasher v. State*, 746 N.E.2d 71, 72 (Ind.2001); *Chambliss v. State*, 746 N.E.2d 73, 77 (Ind.2001). We look to the evidence most favorable to the verdict and reasonable inferences drawn therefrom. *Id.* We will affirm the convic-

tion if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

■ Within the narrow limits of the "incredible dubiosity" rule, a court may impinge upon a jury's function to judge the credibility of a witness. *White v. State*, 706 N.E.2d 1078, 1079 (Ind.1999). If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. *Id.* This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Id.* We reiterate that application of this rule is rare and that the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. *Stephenson v. State*, 742 N.E.2d 463, 498 (Ind.2001) (quoting *Bradford v. State*, 675 N.E.2d 296, 300 (Ind.1996)).

We find the evidence sufficient to support Defendant's conviction and that the rule of incredible dubiosity does not apply in the circumstances of this case. Mock's various statements and her testimony at trial were somewhat inconsistent and possibly equivocal. However, her testimony was not inherently improbable, nor was there a complete lack of circumstantial evidence. Mock's story was consistent with the evidence found at the crime scene. Police found Thomas's body near his room. There was a trail of blood from the threshold of Thomas's room to where his body was found. A witness also testified that Defendant and Fredrick confessed to the crime.

Mock made various statements during interviews, depositions, and the trial that were not consistent, but during cross-examination Defendant questioned her extensively regarding the inconsistencies.

As we have stated, it is for the jury to decide the credibility of a witness. Here, the jury was informed of Mock's previous statements, it was informed of the evidence at the crime scene, and could therefore evaluate her credibility for itself.

### III

██ Defendant contends that he was prejudiced by certain notes that were admitted over his objection, although the trial court withdrew the notes from evidence and admonished the jury to disregard them.

During the trial, Tyrand Terry, a jailhouse informant, testified that both Defendant and Fredrick had made incriminating statements, including "bragging about what they did to Mr. Thomas." Terry also testified regarding specific conversations with Defendant and Fredrick. Terry said that he took notes detailing the highlights of each conversation. He referred to these notes during his testimony. The State then moved to admit the notes, exhibits 11–16, into evidence.

The trial court initially admitted the notes into evidence over Defendant's objection. The court later changed its mind and admonished the jury, ordering them "not to consider the exhibits in consideration of the case."

██ When a trial judge admonishes the jury to disregard an event that occurred at trial, the admonishment is usually an adequate curative measure, and a mistrial is not necessary. *See Hazzard v. State*, 642 N.E.2d 1368, 1370 (Ind.1994). In reviewing a trial court's determination that an admonition sufficiently cured any prejudice, this court looks to the likely impact on the verdict. *Id.*

Here, Terry testified that both Defendant and Fredrick had made incriminating statements, including "bragging about what they did to Mr. Thomas." Terry then testified regarding specific conversa-

tions with Defendant and Fredrick, referring to his notes made of the conversation. Terry also testified regarding other specific conversations he had had with Defendant in which Defendant incriminated himself and Fredrick.

Given Terry's extensive testimony as to Defendant's and Fredrick's admissions, it is unlikely that the notes would have had any significant persuasive effect on the jury. We find that any error in the temporary admission of the exhibits did not affect Defendant's substantial rights and does not require reversal. Ind. Trial Rule 61.

### Conclusion

We affirm the judgment of the trial court

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.