Richard J. LAUGHNER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A01–0104–CR–141.

Court of Appeals of Indiana.

June 12, 2002.

Richard Kammen, Gilroy, Kammen & Hill, Joel Schumm, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Richard Laughner appeals his conviction, after a trial by jury, of one count of attempted child solicitation, a class C felony. He also appeals his sentence thereon.

We affirm in part, reverse in part, and remand for resentencing.

### ISSUES

1. Whether attempted child solicitation is a crime.

2. Whether attempted child solicitation can be established when the subject of the solicitation is not a child.

3. Whether a conviction for attempted child solicitation is unconstitutional on various grounds.

4. Whether the trial court erroneously denied Laughner's motion for change of venue.

5. Whether the trial court erred in allowing the State to file its amended information six days before trial and denying Laughner's motion for a continuance.

6. Whether Laughner's due process rights were violated by the State's destruction or failure to preserve the instant message communications from Laughner to Metzger during the period between July 13 and August 8, 2000.

7. Whether the trial court erroneously admitted the documents in which Metzger saved his instant message communications with Laughner.

9. Whether the trial court erred in denying two of Laughner's tendered instructions.

10. Whether the trial court erred in sentencing Laughner.

### FACTS

In the year 2000, Indiana State Police detective Joel Metzger, based in Evansville, was working as part of the Crimes Against Children Unit. Metzger "entered" computer chat rooms on the internet and portrayed himself as a child, thus available to be solicited for sex by adults. On the afternoon of July 13, 2000, Metzger was using the screen name "LLuke12" in a chat room of America On Line (AOL) called "Indy M4M," Indy men for men. As "LLuke12," Metzger received an instant message from "Tret6128," who was later identified as Laughner, age forty. In the course of this instant message conversation, Laughner asked Metzger's age, and Metzger said he was thirteen years-old; Laughner asked if Metzger wanted to "meet up" and asked to "chat about this on the phone." (Tr. Ex. 1). When Metzger said that was not possible because his mother was home and "she watches me on the phone," Laughner said he would try to find Metzger in the chat room during the evening. *Id.* Using the AOL instant message program, Metzger activated the "select all" feature to capture the conversation-via-messages with Laughner, and then the "copy" feature; finally, he transferred the copy of the conversation to a document he saved in his word-processing program. (Tr. p. 517).

On that evening, Laughner found Metzger in the chat room and asked a series of questions about his sexual experiences; he again indicated his desire to talk to Metzger on the telephone. After Metzger gave Laughner his telephone number, Laughner called back immediately. As before, Metz-

ger saved the instant message conversation; he also tape recorded the telephone conversation.[1]

During the next few weeks, Laughner attempted to talk with Metzger three or four times by sending brief instant messages saying "hi or hello." (Tr. p. 528). Metzger did not respond because based upon the July 13th telephone conversation, he thought that Laughner was simply interested in "a phone sex relationship." *Id.*

On August 8, 2000, Laughner sent Metzger an instant message saying, "u wanna meet up" and again asked how old Metzger was. (Tr. Ex. 4). Metzger answered, "13." *Id.* Laughner asked where Metzger was located and Metzger told him Evansville. Laughner said that he was in Indianapolis and asked for a picture of Metzger. Laughner sent Metzger a picture of himself, and Metzger sent Laughner a picture of a child. Laughner once more asked whether Metzger wanted to "meet up," and then asked some ten or eleven questions about Metzger's sexual experiences.[2] *Id.* Again, Metzger saved the instant message conversation.

On the morning of August 11, 2000, Laughner contacted Metzger and asked, "u wanna get off?" (Tr. Ex. 5). Metzger said, "when?" and Laughner replied, "today." *Id.* Metzger asked if Laughner was "serious" about "com[ ]ing down here," and Laughner answered, "i am very serious," and added "today?" *Id.* Laughner said, "i will come down," that he could be there "around 2," and they arranged to meet at the Bigfoot gas station. *Id.* Laughner stated twice again that he would be there at 2:00 p.m. The instant message conversa-

tion ended at 10:05 a.m., and Metzger saved it as he had the other conversations.

Laughner arrived at the Bigfoot station at 1:57 p.m. When confronted by Metzger, Laughner admitted that he was "Tret6128." Subsequently, Metzger advised Laughner of his *Miranda* rights; Laughner signed a statement indicating he understood his rights, waived them, and was willing to answer questions and make a statement without a lawyer. During that interview, which was taped and played for the jury,[3] Laughner admitted to having sent the various instant messages to "LLuke12" and having telephoned "LLuke12" on July 13th. According to Laughner, he drove to Evansville on August 11th "to see" whether "LLuke12" was a child; when asked whether he was hoping that was the case, his answer was, "yes in a way"; as to whether he would have acted upon the "opportunity" to have "consensual" sex with a thirteen year-old child, he answered, "It would have been tough." (Appellant's App. p. 286).

The State initially charged Laughner with attempted child solicitation, a class C felony, on August 17, 2000, in Vanderburgh County. On August 30, 2000, the State filed an amended information charging Laughner with child solicitation, a class C felony. On January 21, 2001, Laughner filed a motion to dismiss, arguing that one could not commit the crime of child solicitation "with an adult." (Tr. p. 5). The trial court denied the motion to dismiss. On March 15, 2001, the trial court *sua sponte* reconsidered its previous ruling, stating that according to its file the charge against Laughner was child solici-

---

1. The audiotape of this telephone conversation was played for the jury during the trial, and a portion was replayed by the prosecutor during his closing argument. However, Laughner's record on appeal does not contain the tape.

2. The last question Laughner asked was, "u wanna get fucked[?]" (Tr. Ex. 4).

3. As with the audiotape of the telephone conversation between Laughner and Metzger, the tape was not included in Laughner's record on appeal.

tation, and as to that charge he was granting the motion to dismiss. The trial court then permitted the State to file an amended information that charged Laughner with attempted child solicitation. Laughner asked for a continuance of the trial set to commence on March 21, 2001. The State objected, arguing that to reschedule its AOL witness would delay the trial for months.[4] The trial court denied Laughner's continuance motion. On March 20, 2001, Laughner filed another motion to dismiss, a motion in limine to exclude the instant message conversations, and a motion for change of venue, all of which were denied.

At trial, the court admitted into evidence, over Laughner's objection, the documents in which Metzger had saved the instant message conversations between himself and Laughner. An expert witness from AOL testified as to how a computer can access an AOL chat room, how an instant message conversation is conducted, and how the text of such a conversation can be recorded; the witness also demonstrated what the various computer screens for chat rooms and instant messaging look like, and explained certain AOL records of Laughner's account. Laughner tendered eleven proposed instructions, several of which were given by the trial court. However, Laughner's proposed instructions regarding the jury deliberation process and the legality of sexual conversations between consenting adults were refused.

The jury convicted Laughner as charged. Subsequently, the trial court imposed the presumptive four-year sentence, to be executed.

### DECISION

1. *The Crime*

Laughner first argues that because there is no "clear statutory language" so providing, there can be no crime of attempted child solicitation in Indiana. Br. of Appellant at 15. We disagree.

We necessarily begin from the premise that all crimes are statutory, and an act constitutes a crime when our legislature has defined it as such. *See Herron v. State*, 729 N.E.2d 1008, 1011 (Ind.Ct. App.2000), *trans. denied.* Accordingly, we turn to that which our legislature has enacted as the definition of the specific offense of *child solicitation* as follows:

A person eighteen (18) years of age or older who knowing or intentionally solicits a child under fourteen (14) years of age to engage in

(1) sexual intercourse;

(2) deviate sexual conduct; or

(3) any fondling or touching intended to arouse or satisfy the sexual desires of either the child or the older person;

commits child solicitation, a class D felony. However, the offense is a Class C felony if it is committed by using a computer network.

Ind.Code § 35–42–4–6. The offense of *attempt* is defined in pertinent part as follows:

A person attempts to commit a crime when, acting with the culpability required for the commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime.

Ind.Code § 35–41–5–1.

When we construe a statute, the primary rule is "to ascertain and give effect to the intent of the legislature." *Chambliss v. State*, 746 N.E.2d 73, 77 (Ind. 2001). "The best evidence of legislative intent is the language of the statute itself,

4. Laughner had deposed this witness five weeks earlier, on February 6, 2001.

and all words must be given their plain and ordinary meaning unless otherwise indicated by statute." *Id.*

The child solicitation statute is a specific one, whereas the attempt statute is one of general applicability. No statutory language forbids there being an attempt offense in the case of the crime of solicitation.[5]

Laughner directs us to *Ward v. State,* 528 N.E.2d 52 (Ind.1988), to support his contention that "one cannot attempt an attempt." Br. of Appellant at 17. *Ward* began from the premise that to constitute "criminal attempt," the defendant "must have been acting with specific intent to commit the substantive crime, and he must have engaged in an overt act which constitutes a substantial step toward commission of the crime." *Id.* at 54 (citing *Zickefoose v. State,* 270 Ind. 618, 388 N.E.2d 507 (1979)). *Zickefoose* declared, "When the defendant has done all that he believes necessary to cause a particular result, regardless of what is actually possible under existing circumstances, he has committed an attempt." 270 Ind. at 623, 388 N.E.2d at 510.

Specifically, *Ward* involved two charges of attempted child molesting, wherein the alleged substantial step was only some verbal solicitation by the defendant. Our supreme court analyzed this verbal solicitation in two steps to determine whether it "rose to the level of an attempt" to commit the crime of child molesting. *Ward,* 528 N.E.2d at 54. In the first step, it declared that such verbal solicitation

may be a substantial step only when: 1) the solicitation takes the form of urging; 2) the solicitation urges the commission of the crime at some immediate time and not in the future; and 3) the cooperation or submission of the person being solicited is an essential feature of the substantive crime.

*Id.* The next step was for the court to "consider the specific crime, and the wrongful human conduct that the legislature sought to sanction." *Id.*

Hence, *Ward* holds that a verbal solicitation can be a substantial step, given certain facts. As to the second step, the court expressly noted that "child molesting is a sufficiently serious crime to justify drawing a fairly early line to identify and sanction behavior as an attempt." *Id.* *Ward* also recognized that unlike other types of two-party solicitation, "child solicitation seems to be the only such crime that involves just one potentially guilty party." *Id.* Such reasoning led to the conclusion that solicitation could rise to the level of an attempt in child molesting. However, as the State emphasized at oral argument,[6] *Ward* did not involve the offense of solicitation and, thus, does not definitively speak to that offense as argued by Laughner.

In support of his argument, Laughner discusses in his brief the academic analysis of solicitation and general attempt offenses and the law of other states as well as federal law. Nevertheless, our task is to first look to the statutes of Indiana, along with evidence of legislative intent therein, and existing Indiana precedent. The foregoing provisions of Indiana statutory and

---

5. Similarly, in Michigan, the court found its general attempt statute "carve[d] out no exception for those who, possessing the requisite criminal intent to commit an offense prohibited by law and taking action toward the commission of that offense, have acted under an extrinsic misconception." *People v. Thou-*

*sand,* 465 Mich. 149 at 165, 631 N.W.2d 694, 701 (2001).

6. We heard oral argument on this case on April 1, 2002. We commend the presentations by both parties.

common law suffice to support the existence of the crime of attempted child solicitation in the case of one who engages in an overt act that constitutes a substantial step toward soliciting someone believed to be a child under fourteen to engage in sexual activity, even if it turns out the solicited person is an adult.

## 2. When the Person Solicited Is Not a Child

■ Laughner next contends that a material element of the crime of attempted child solicitation over the internet is the existence of "an actual child under the age of fourteen," and therefore, "one cannot be convicted of the attempted solicitation of an adult police officer posing as a child because of the failure to establish a material element of the offense." Br. of Appellant at 19. Laughner argues that it was a "legal impossibility" to commit attempted child solicitation in this case because Metzger, to whom he directed the soliciting communication, was not a child under the age of fourteen.

■ To support his assertion about the "material element," Laughner directs us to the definition of the child solicitation offense. However, as the State correctly notes, Laughner "was not convicted of child solicitation; he was convicted of attempted child solicitation, and the age of the intended victim is not an essential element" of the offense of attempted child solicitation. Br. of Appellee at 14. Thus, the initial premise of Laughner's argument must fail.

The attempt statute expressly provides, "It is no defense that, because of a misapprehension of the circumstances, it would have been impossible for the accused person to commit the crime attempted." I.C. § 35-41-5-1(b). In *Zickefoose*, our supreme court found it "clear" that this language "reject[ed] the defense of impossi-

bility." 270 Ind. at 623, 388 N.E.2d at 510. The court continued,

It is not necessary that there be a present ability to complete the crime, nor is it necessary that the crime be factually possible. When the defendant has done all that he believes necessary to cause the particular result, regardless of what is actually possible under existing circumstances, he has committed an attempt. The liability of the defendant turns on his purpose as manifested through his conduct. If the defendant's conduct, in light of all the relevant facts involved, constitutes a substantial step toward the commission of the crime and is done with the necessary specific intent, then the defendant has committed an attempt.

*Id.*

Here, the State alleged that Laughner's conduct established that he had done all that he believed necessary to have solicited a child under fourteen, and that the evidence showed that conduct to include a substantial step toward solicitation of a child under fourteen. The fact that it was not "actually possible," *Zickefoose*, 270 Ind. at 623, 388 N.E.2d at 510, because Metzger was not a child, does not bar his conviction for an attempted child solicitation. *See id.*

## 3. Constitutional Claims

■ Laughner contends that "criminalizing the attempted solicitation of an adult pretending to be a child on the internet violates the Fifth and Fourteenth Amendments and Article One, Sections One and Twelve, of the Indiana Constitution." Br. of Appellant at 23. He argues that his prosecution violates Due Process and Indiana's Due Course of Law provision by criminalizing his "belie[f] that LLuke12 was a child." *Id.* at 24, 26. As no more than argumentative assertions, these

claims are insupportable. Laughner was prosecuted not for believing LLuke12 was under fourteen but for having intentionally solicited a person whom he believed to be a child under the age of fourteen to engage in sexual activity.

■ Next, Laughner argues that the internet child solicitation statute violates the federal and state constitutional protections of speech by seeking to "criminalize[ ] communications over the internet." *Id.* at 29. Laughner contends the "First Amendment violation is especially egregious as applied" because he was convicted for typing the "innocuous question" of "u wanna get off." Reply Br. at 12. However, our review of the statute indicates that it is narrowly drafted and criminalizes only specific internet communications those that solicit a child under age fourteen to engage in certain sexual activities intended to arouse or satisfy the sexual desire of either the child or the solicitor. Thus, the statute does not suffer from the overbreadth found in the Communications Decency Act in *Reno v. ACLU,* 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). As to Laughner's claim that his single question did not meet the "solicitation . . . test of *Ward v. State,* 528 N.E.2d 52, 54 (Ind.1988)," Reply Br. at 12, we find that the context of Laughner's communications on August 11 does satisfy *Ward.* He asked, "u wanna get off?", specified "today," stated he was "very serious" about traveling to Evansville, three times indicated he would be there at 2:00, and arranged a specific meeting place. (Tr. Ex. 5). As applied, Indiana's statute does not violate freedom of speech.

■ Laughner next argues that the statute violates the Proportionality Clause of the Indiana Constitution because it punishes the attempted solicitation of a child on the internet, a class C felony, more severely than the face-to-face solicitation of an actual child, a class D felony. He directs us to the case of *Conner v. State,* 626 N.E.2d 803 (Ind.1993), in which our supreme court considered the statutory anomaly whereby dealing nearly ten pounds of real marijuana exposed one to less criminal liability than distributing one gram of fake marijuana. The Proportionality Clause, Article 1, Section 16, directs that "[a]ll penalties shall be proportioned to the nature of the offense." *Conner* is not directly apposite, because in *Conner,* the overly severe penalty was for selling what was represented to be an illegal substance but was not, as compared to the penalty for selling the actual illegal substance. Here, the comparison is between soliciting a child over the internet and soliciting a child in person. Thus, the question is whether the penalty is "graduated and proportioned to the nature of" the offense. 626 N.E.2d at 806.

■ Although on its face the differing penalty for the two crimes noted by Laughner is somewhat troubling, we are not free "to set aside the legislative determination as to the appropriate penalty merely because it seems too severe." *State v. Moss-Dwyer,* 686 N.E.2d 109, 112 (Ind.1997). The legislature may have deemed that use of the internet may expose Indiana children to dangers that require a greater vigilance by society, or that use of the internet lessens inhibitions. Such considerations could lead it to enact the internet statute with a more severe penalty, in order to stand as a stronger deterrent. Hence, the statutory scheme may reflect a legislative determination that the internet crime was indeed a more serious crime. *See id.* at 113. Such reasoning leaves us unable to justify striking down the legislative determination as to the appropriate penalty for the internet solicitation of a child.

### 4. Venue

Laughner asserts that venue for the offense was not proper in Vanderburgh County "when the sole basis of the charge was that [he] committed the offense simply by typing the message 'u wanna get off?' into his computer in Marion County." Br. of Appellant at 38. According to Laughner, any offense was "committed" by him when he sent his message; because he sent the message in Marion County, he must be tried in Marion County, "the county in which the offense shall have been committed," under Article 1, Section 13 of the Indiana Constitution.

In *Wurster v. State*, 715 N.E.2d 341, 350 (Ind.1999), our supreme court noted that sending a tax return from one county to a second county for processing was

analogous to firing a gun across a county line. The offense is committed in both the county where the shooting starts and the county where the victim is hit.

For the purpose of venue, it found the critical fact in such a scenario to be whether the defendant took any "action directed at" the second county. *Id.* Here, Laughner admittedly sent the communication of August 11 to LLuke12 in Evansville, which is in Vanderburgh County. Further showing "action directed at" Vanderburgh County are the facts that he (1) arranged a meeting in Evansville in furtherance of the attempt that was the subject of the conversation, and (2) did immediately travel to that county. Because the charge involved action taken by him directed at Vanderburgh County, that county had venue to try him.

### 5. Information Amendment

Next, Laughner argues that the trial court "abused its discretion in allowing the State to file a substantively amended information, which changed its theory of the case, six days before the scheduled trial and then denying [his] motion for a continuance." Br. of Appellant at 45. As noted in FACTS, Laughner was originally charged on August 17, 2000, with attempted child solicitation for having attempted

to commit the crime of child solicitation by intentionally soliciting Joel Metzger, an undercover officer who was impersonating a child under fourteen (14) years of age, to engage in sexual intercourse by communicating such solicitation using a computer network, which conduct constituted a substantial step toward the commission of said crime of child solicitation . . . .

(Appellant's App. p. 12). Shortly thereafter, on August 30, 2000, the charge was amended to child solicitation, for having

knowingly solicit[ed] Joel Metzger, an undercover officer who was impersonating a child under fourteen (14) years of age, to engage in deviate sexual conduct or any fondling or touching intended to arouse or satisfy the sexual desires of either the alleged child or the said Richard J. Laughner, by communicating such solicitation using a computer network . . . .

(Appellant's App. p. 20). Laughner moved to dismiss the child solicitation charge, and the trial court initially denied his motion based upon its mistaken belief that the charge remained attempted child solicitation. Six days before trial, when the trial court realized that the pending charge was child solicitation, it granted Laughner's motion to dismiss. At the same time, the trial court allowed the State to amend the information to the charge of attempted child solicitation, to wit: that Laughner

did attempt to commit the crime of Child Solicitation by knowingly soliciting Joel Metzger, an undercover officer who was impersonating a child under fourteen (14) years of age, to engage in deviate sexual conduct or any fondling

or touching, the said Richard Laughner using a computer network, and through the use of the computer, discussing sex with Joel Metzger that they engage in sexual activity to arouse or satisfy the sexual desire of either the alleged child or the said Richard J. Laughner, which conduct constituted a substantial step toward the commission of said crime of Child Solicitation.

(Appellant's App. p. 187). Laughner moved for a continuance, which was denied.

 Laughner contends the March 15th amendment was one of substance, in which case the law requires the amendment to take place thirty days before the February 2nd omnibus date. *See* Ind. Code § 35–34–1–5(b). However, "[a]s a general rule any information may be amended at any time before, during, or after trial as long as the amendment does not prejudice the substantial rights of the defendant." *Hegg v. State*, 514 N.E.2d 1061, 1063 (Ind.1987). Those rights are deemed not to have been prejudiced when the defendant has notice of the amended charge, an opportunity to be heard regarding the charge, and adequate time to prepare a defense. *Id.* Here, Laughner had notice of the amendment, and his argument against the amendment was heard by the trial court. The amendment was filed on a Thursday, and trial was set to begin the next Wednesday. In his brief, as at oral argument, Laughner argues that the amended charge required him to marshal different facts, evidence, and authority, but he provides no specific examples thereof. We do not find that the trial court committed reversible error in allowing the State to amend the information six days before trial of a charge that had been pending for over six (6) months.

 Laughner also claims that the trial court erred when it denied his request for a continuance, arguing that it is required when " 'requested, to allow the defendant adequate time to prepare for trial.' " Br. of Appellant at 55 (quoting *Tripp v. State*, 729 N.E.2d 1061, 1064 (Ind. Ct.App.2000)). We note that *Tripp* did not concern the denial of a motion for a continuance. Moreover, as in the previous discussion, Laughner fails to indicate what he was unable to do to prepare for trial in the six days allowed. The trial court's decision on a defendant's continuance motion is reviewed for an abuse of discretion. *Henderson v. State*, 173 Ind.App. 505, 508, 364 N.E.2d 175, 177 (1977). We find no such abuse here.

### 6. *Instant Message Preservation*

 Laughner claims the trial court violated his due process rights by not having preserved the instant message communications from him to Metzger between July 13 and August 8, 2000, communications which he characterizes as "exculpatory evidence." Br. of Appellant at 57. He concedes that "there is no way to know what transpired in the unpreserved chats" but then "contends that several lengthy conversations took place, which further bolstered his opinion that LLuke12 was not a child." *Id.* at 59. However, no evidence in the record supports this latter contention.

 Materially exculpatory evidence "is that evidence which 'possesses an exculpatory value that was apparent before the evidence was destroyed' and must 'be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' " *Chissell v. State*, 705 N.E.2d 501, 504 (Ind.Ct.App.1999) (quoting *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)). The only evidence about messages between July 13th and August 8th is Metzger's

testimony that Laughner sent him very brief instant messages several times but that he had neither answered nor saved those messages because he believed Laughner was only interested in phone sex. As we said in *Chissell,* a defendant "is not required to prove conclusively that the destroyed evidence was exculpatory," but "there must be some indication that the evidence was exculpatory." 705 N.E.2d at 504. Finding none here, we find no violation of Laughner's due process rights in this regard.

7. *Admission of Instant Message Conversation Documents*

 Next, Laughner argues that the trial court "abused its discretion in admitting the alleged instant message chats between [him] and the state trooper posing as a child because the text of the alleged chats was not an 'original' preserved by the AOL logging feature but rather a cut-and-pasted copy into a word-processing program, which allowed for editing and tampering." Br. of Appellant at 60. He cites Indiana Evidence Rules 1002 and 1001(3), and contends the admitted documents "were not 'originals' within the meaning of those rules." *Id.* at 62.

 The trial court has broad discretion to admit or exclude evidence, and its action in that regard will not be reversed on appeal "absent an abuse of that discretion." *Hardiman v. State,* 726 N.E.2d 1201, 1203 (Ind.2000). "A trial court abuses its discretion when its evidentiary ruling is clearly against the logic, facts and circumstances presented." *Id.*

As the State correctly notes, Laughner does not challenge the foundation for admission of the documents—established by Metzger's testimony about his knowledge of the conversations and that the printed documents accurately reflected the contents of the conversations. Rather, his

argument is that the documents should not have been admitted because they were not "original," which could only be achieved by the use of an AOL "logging" feature.

Evidence Rule 1002, the "best evidence" rule, requires an "original" in order to prove "the content" of a writing or recording. However, Evidence Rule 1001(3) provides that when "data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately is an 'original.' " According to Metzger, he saved the conversations with Laughner after they were concluded, and the printout document accurately reflected the content of those conversations. Therefore, the printouts could be found to be the "best evidence" of the conversations between Metzger and Laughner, and their admission would not be an abuse of discretion.

9. *Instructions*

 Jury instruction is a matter within the trial court's sound discretion, and we review its decision thereon "only for an abuse of that discretion." *Cline v. State,* 726 N.E.2d 1249, 1256 (Ind.2000). When the trial court refuses a tendered instruction, we consider "(1) whether the instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court." *Id.* Laughner contends that the trial court abused its discretion in refusing two of his proposed "tendered instructions that were correct statements of the law, supported by the evidence, and not covered by other instructions." Br. of Appellant at 64.

 The first of the proposed instructions that he tendered, and argues should have been given, is as follows:

The court instructs you that as a matter of law the following conduct is legal and may not be considered by you as evidence of guilt should you believe that there has been evidence of such conduct:

1. Discussions about sex over the internet.

2. Discussions about engaging in homosexual behavior between consenting adults.

3. Homosexual behavior between consenting adults.

(Appellant's App. p. 545). The trial court instructed the jury on the statutory definition of an attempt and child solicitation. It further instructed the jury that for it to find Laughner guilty, the State must have proven beyond a reasonable doubt that Laughner

1. Knowingly had a conversation about sex with Joel Metzger on August 11, 2000;

2. That the defendant had that conversation with the intent to engage in either criminal deviate conduct or any touching or fondling with the intent to arouse or satisfy the sexual desires of either the defendant or Joel Metzger;

3. That this conversation with Metzger was done by using a computer network;

4. That this conversation constituted a substantial step towards the commission of the offense of Child Solicitation;

5. That the event occurred in Vanderburgh County;

6. And in addition, before you may find the defendant guilty the defendant must have believed from all of the facts and circumstances known to him that Joel Metzger was under the age of fourteen years of age at the time of their instant message conversation on August 11, 2000.

(Tr. pp. 739–740). First, we believe that in light of the detail already contained in the instruction given by the trial court, Laughner's tendered instruction would have been both confusing to the jury and misleading as it considered the instant charge. Further, we find that when the trial court explicitly instructed the jury as to what facts it needed to find in order to find Laughner guilty of the offense charged, i.e., what the jury "should consider," the trial court's instruction implicitly covered the substance of Laughner's proposed instruction as to what "may not be considered" by the jury. See Cline, 726 N.E.2d at 1256 ("the substance of the instruction is covered by other instructions given by the court").

■ Next, Laughner argues that the trial court abused its discretion when it refused to give his second proposed instruction to the jury as follows:

The Court will now instruct you concerning the manner of your deliberations:

When you retire to the jury room you should first select a foreman. The role of the foreman is to communicate with the court and to sign the verdict form. The foreman does not have the right to control the deliberations.

However, if any juror is dissatisfied with the manner in which deliberation [sic] are being conducted that juror should communicate his or her dissatisfaction with [sic] the court.

Any juror may request that the foreman communicate to the Court any question which any juror may have. The foreman is obligated to comply with this request.

The jury may request to review the exhibits and if it has a disagreement as to what a particular witness said may ask to listen to that witnesses [sic] entire testimony.

Each juror must be given the opportunity to fully state his or her views of the evidence.

You should feel under no pressure to reach a verdict.

If a juror or jurors need to rest, to take a break from deliberations, need to obtain nourishment, need to smoke a cigarette, or need to adjourn deliberation in order to sleep that need should be communicated to the court which will comply with any reasonable request. In the event that you wish to sleep you will be transported to a local hotel where you will be provided appropriate accommodations at county expense.

(Appellant's App. p. 546). Laughner cited and lifted language from a series of cases for the proposition that his proposed tendered instruction correctly states the law. Our supreme court has explained that "[t]he mere fact that certain language or expressions are used in the opinions of this Court to reach its final conclusion does not necessarily make it proper language for instructions to the jury." *Morgan v. State*, 544 N.E.2d 143, 148 (Ind.1989).

The trial court instructed the jury as to the general procedure it should undertake in its deliberations. Laughner finds no fault in that instruction but argues that his proposed instruction "provided a far more detailed and thorough explanation of the rights and responsibility of jurors." Reply Br. at 26. We will not underestimate the intelligence of a jury by assuming such "detail" is absolutely necessary for· it to perform its job. The instructions given by the trial court on jury procedure adequately informed the jury thereon.

10. *Sentence*

▆▆▆▆ Sentencing decisions are entrusted to the sound discretion of the trial court and will be reversed only for abuse of that discretion. *Blanche v. State*, 690 N.E.2d 709, 714 (Ind.1998).

Laughner claims the trial court impermissibly found "aggravating circumstances that relied exclusively on material elements of the offense." Br. of Appellant at 69. Specifically, the trial court referred to " 'the nature and circumstances of the case' and the fact that Laughner 'was intending sexual contact with a thirteen year old' " as aggravating circumstances. (Sentencing Tr. p. 21). Then, the trial court used these purported aggravators to offset the multiple mitigating circumstances it found.

▆▆▆▆ As Laughner's cited authority explains, a presumptive sentence "assumes the underlying elements," which is the reason why it is "improper to enhance a sentence" therefor. *West v. State*, 755 N.E.2d 173, 186 (Ind.2001). Here, the trial court did not give Laughner an enhanced sentence; it ordered him to serve the presumptive sentence. ⸳ However, we believe it appropriate to examine the trial court's explanation of what it considered as aggravating circumstances because it expressly engaged in a balancing of aggravators against mitigators.

First, the trial court found that the "nature and circumstances of the case," specifically that "there [wa]s no reasonable doubt at this point that you were intending sexual contact with a thirteen year old," led it to "believe" that Laughner was "in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility." (Sentencing Tr. p. 21). In *Mayberry v. State*, 670 N.E.2d 1262, 1271 (Ind.1996), our supreme court explained that when applying the statutory aggravator concerning the need for treatment, the trial court must have given a "specific individualized statement of the reason why the defendant was in need of correctional or rehabilitative treatment" in

a penal facility. Here, apart from its reference to facts inherent in the crime of which Laughner was committed, the trial court failed to provide the necessary explanation of *why* Laughner needed treatment in a penal facility.

The trial court also recited how Laughner's specific actions, again noting the clear inference that Laughner was "talking to a thirteen year old boy," led it to apply the statutory aggravator "that the imposition of a reduced sentence or suspension of the sentence or imposition of probation would depreciate the seriousness of the crime." (Sentencing Tr. pp. 21, 22). As before, with the "need for treatment" aggravator, the trial court has utilized the circumstances of Laughner's crime, the attempt to solicit a child, as a statutory aggravator. Further, our supreme court has repeatedly held that the "depreciate the seriousness of the crime" aggravator applies "only when the court considers imposing a shorter sentence." *Taylor v. State*, 695 N.E.2d 117, 122 (Ind.1998). We recognize that those decisions concern when the aggravator may *not* be used, *i.e.*, to enhance a sentence, and that there is no enhanced sentence here. Nevertheless, the trial court necessarily had to have considered this for the purpose of enhancing Laughner's sentence in order to have found it totally negated when balanced against the mitigating circumstances.

Here, the trial court ordered Laughner to serve the presumptive sentence, despite having expressly found several mitigating circumstances: that Laughner had "no history of delinquency or criminal activity," that Laughner had led "a law abiding life for a substantial period of time prior to the commission of this crime," and that Laughner's imprisonment would result in a hardship to his wife. (Sentencing Tr. p. 22). As already noted, the application of the presumptive sentence takes into account that which is necessary to constitute the crime; therefore, purported aggravating circumstances based on the material elements of the crime cannot be used to enhance a presumptive sentence. *See West*, 755 N.E.2d at 178. Further, although we find no authority directly stating such a proposition, we must conclude that that which cannot be used to enhance a sentence cannot be used to "balance" circumstances that may properly serve to reduce the sentence as mitigators.

The mitigating circumstances found by the trial court are both undisputed and supported by the record, and no permissible aggravators were found that may serve to offset those mitigators. Accordingly, we remand to the trial court for resentencing of Laughner to less than the presumptive sentence.

We affirm in part and reverse in part.

SHARPNACK, J., and BAILEY, J., concur.