# FOR PUBLICATION



**FILED**

Jan 27 2014, 6:51 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL R. FISHER**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| QUANARDEL WELLS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1306-CR-550 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-0910-FA-90869

**January 27, 2014**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Quanardel Wells appeals his conviction of and sentence for two counts of Class A felony criminal deviate conduct,[1] one count of Class A felony rape,[2] two counts of Class B felony criminal deviate conduct,[3] one count of Class B felony criminal confinement,[4] one count of Class C felony criminal confinement,[5] and one count of Class D felony strangulation.[6] He presents two issues for our review:

1. Whether the trial court erred when it denied his Motion for Severance of Offenses; and

2. Whether Wells' one hundred year aggregate sentence was inappropriate.

We affirm.

**FACTS AND PROCEDURAL HISTORY[7]**

In the early morning hours of June 10, 2009, Wells approached L.H. near 10th and Rural Streets in Indianapolis. Wells asked L.H. if she wanted to make some money and she said she did. She got into Wells' car, and they agreed he would pay her $20 for oral sex. He asked L.H. to perform oral sex on him while he smoked crack cocaine, and she complied. While she was performing oral sex on him, Wells told L.H. to "go from the top to the bottom

---

[1] Ind. Code § 35-42-4-2(b).
[2] Ind. Code § 35-42-4-1(b).
[3] Ind. Code § 35-42-4-2(a).
[4] Ind. Code § 35-42-3-3(b)(2).
[5] Ind. Code § 35-42-3-3(b)(1).
[6] Ind. Code § 35-42-2-9(b).
[7] The record on appeal in this case was prepared pursuant to the Indiana Supreme Court's "Order Establishing the Indiana Court Reporting Pilot Project for Exploring the Use of an Audio/Visual Record on Appeal" issued on September 18, 2012, and effective on July 1, 2012. *See* Ind. Supreme Court Case No. 94S00-1209-MS-522. Therefore, the citations to the transcript will be to the "A/V Rec." We acknowledge the ongoing cooperation of the Honorable Mark D. Stoner of Marion Superior Court, the Marion County Public Defender Agency, and the Office of the Indiana Attorney General in the execution of this pilot project.

and don't come up off it [his penis]." (A/V Rec. 5/21/13 9:19:30.)

As Wells drove toward a different location to obtain more cocaine, he became more aggressive and told L.H. to perform oral sex on him again, and she complied. Wells pulled into the parking lot of an apartment complex and ordered L.H. to perform oral sex on him. She refused and unsuccessfully attempted to leave the car. Wells told L.H. to remove her pants. She refused and again attempted to escape. Wells moved to the passenger side of the car and L.H. screamed. Wells put his hands around L.H.'s throat and mouth so she could not scream. L.H. was able to escape through the car window, and Wells sped away. L.H. flagged down a passing car and called the police.

Sometime after midnight on June 24, 2009, Wells stopped his car near 10th Street and Sherman Drive in Indianapolis to speak with M.M., who was walking home. M.M. was not able to understand what Wells said, so she leaned in the open passenger window of Wells' car. Wells grabbed M.M. by the hair and pulled her into the car. Wells then drove to a nearby house, parked, and began smoking crack cocaine.

When he finished smoking, Wells placed a sharp object against M.M.'s neck and told her "to suck his dick from the . . . bottom to the top and that . . . it was not to come out of . . . [her] mouth or he would cut [her]." (A/V Rec. 5/20/13 5:00:04.) M.M. performed oral sex on Wells while he drove. Wells took cigarettes, cash, crack cocaine, and a crack pipe from M.M.'s pockets. He told M.M. he intended to have vaginal intercourse with her. M.M. became frightened, grabbed the steering wheel, and pressed on the horn. Wells started punching M.M. The car crashed into a median and Wells pushed M.M. out of the car. M.M.

3

noted the license plate number and asked the occupant of a nearby house to call police.

In the afternoon of July 4, 2009, Wells approached L.B. as she was walking near 10th Street and Goodlet Avenue in Indianapolis. Wells asked questions L.B. understood to be solicitation for sexual acts, and she got into Wells' car after he offered her $20. L.B. told Wells she did not feel comfortable doing drugs or participating in sexual acts in the car, so they would have to go to her house or to a motel. Wells drove to a motel and rented a room.

Once in the room, L.B. saw Wells had a knife. He told her to stay quiet and not to move. He ordered L.B. to "suck his penis from the top to the bottom and if it fell out of [her] mouth he would cut [her] face up." (A/V Rec. 5/21/13 1:36:36.) L.B. performed oral sex on Wells while he smoked crack cocaine. L.B. and Wells remained in the motel room overnight, during which time Wells forced L.B. to submit to oral and vaginal sex. During the night, Wells took cigarettes, lighters, and the $20 he gave L.B. from L.B.'s purse. In the morning, Wells drove L.B. to within a few blocks of her home. L.B. did not report the incident to police at that time, but told her roommate, N.M., and another person what had occurred.

On July 8, 2009, Wells approached N.M. near 10th Street and Goodlet Avenue in Indianapolis and offered her $50 to perform sex acts. N.M. agreed and got into Wells' car. Wells drove to a parking lot and began smoking crack cocaine. When he finished smoking, he held a knife to N.M.'s throat and ordered to "suck his dick until he says stop . . . [and] don't take it out of [her] mouth." (A/V Rec. 5/21/13 11:12:53.) N.M. began performing oral sex on Wells while Wells smoked crack cocaine. N.M. grabbed Wells' knife and threw it out

4

of the car window. N.M. then opened the car door and jumped out. Wells drove away, and N.M. took the knife home. She told her roommate, L.B., what had happened, and later that morning, N.M. and L.B. flagged down a police officer and reported the incidents with Wells.

In August 2009, the State charged Wells with three counts (Counts I, II, and III) of Class A felony criminal deviate conduct for victims N.M. and L.B.; one count (Count IV) of Class A felony rape for victim L.B.; two counts (Counts V and VI) of Class B felony criminal deviate conduct for victims L.H. and M.M.; one count (Count VII) of Class B felony criminal confinement for victim N.M.; two counts (Counts VIII and IX) of Class C felony criminal confinement for victims L.H. and M.M.; one count (Count X) of Class D felony strangulation for victim L.H.; and one count (Count XI) of Class D felony intimidation[8] for victim N.M. Wells moved to sever the offenses. The trial court denied the motion and certified the issue for interlocutory appeal.

We affirmed the trial court's decision in *Wells v. State*, No. 49A05-1012-CR-731 (Ind. Ct. App. September 22, 2011). Our Indiana Supreme Court granted transfer, but after oral argument vacated transfer and reinstated our opinion. *Wells v. State*, 983 N.E.2d 132 (Ind. 2013).

The State moved to dismiss one of the Class A felony deviate conduct charges, one of the Class B felony criminal confinement charges, and the Class D felony intimidation charge, and the trial court granted that motion. Wells' trial began on May 20, 2013, and he renewed his request to sever the offenses. The trial court again denied his request.

---

[8] Ind. Code § 35-45-2-1(b)(1).

On May 22, the jury found Wells guilty of the eight charges on which he was tried. On May 30, trial court sentenced Wells to thirty-five years each for Counts I and IV; fifteen years each on Count II (entered as a Class B felony), Count V and VI; six years on Count VIII; ten years on Count IX; and two years on Count X. The trial court ordered the sentences for Counts I, IV, V, and VI be served consecutively to one another, with all other sentences to be served concurrently, for an aggregate sentence of one hundred years.

## DISCUSSION AND DECISION

1.    <u>Motion for Severance of Offenses</u>

Indiana Code § 35-34-1-9(a) provides:

> Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:
>> (1) are of the same or similar character, even if not part of a single scheme or plan; or
>> (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

A defendant "shall have a right to a severance of the offenses" when the offenses were joined "solely on the ground that they are of the same or similar character." Ind. Code § 35-34-1-11(a). In such an instance, the right is automatic and the trial court has not discretion to deny the motion. *Maymon v. State*, 870 N.E.2d 523, 528 (Ind. Ct. App. 2007), *trans. denied*. Because the trial court has no discretion whether to sever offenses when the offenses are joined pursuant to Ind. Code § 35-34-1-9(a)(1), we review the trial court's decision *de novo*. *Booker v. State*, 790 N.E.2d 491, 494 (Ind. Ct. App. 2003), *trans. denied*.

However, offenses "may be sufficiently 'connected together' to justify joinder under

6

[Ind. Code § 35-34-1-9(a)(2)] 'if the State can establish that a common *modus operendi*

linked the crimes and that the same motive induced the criminal behavior.'" *Ben-Yisrayl v.*

*State*, 690 N.E.2d 1141, 1145 (Ind. 1997), *cert. denied*, 525 U.S. 1108 (1999). A *modus*

*operandi* is "a pattern of criminal behavior so distinctive that separate crimes are recognized

as the handiwork of the same wrongdoer." *Penley v. State*, 506 N.E.2d 806, 810 (Ind. 1987).

When offenses are joined under Ind. Code § 35-34-1-9(a)(2), the court

> shall grant a severance of offenses whenever the court determines that
> severance is appropriate to promote a fair determination of the defendant's
> guilt or innocence of each offense considering:
> (1) the number of offenses charged;
> (2) the complexity of the evidence to be offered; and
> (3) whether the trier of fact will be able to distinguish the evidence and
> apply the law intelligently as to each offense.

Ind. Code § 35-34-1-11(a).

Wells argues the trial court erred when it denied his Motion for Severance of

Offenses. Our opinion on Wells' interlocutory appeal held the trial court did not abuse its

discretion when it denied his motion to sever as a matter of right because

> the verified statement of evidence demonstrates striking similarities that go
> beyond the mere "same or similar character" of the offenses.
>                          * * * * *
>         The evidence is similarly clear with respect to the commonality of the
> motivation for committing the crimes. It is apparent that the perpetrator was
> motivated to compel prostitutes to perform deviate sexual conduct upon him
> without him having to pay for it. Taken as a whole, the foregoing evidence
> reflects "a pattern of criminal behavior so distinctive that separate crimes are
> recognizable as the handiwork of the same wrongdoer." The trial court did not
> err in denying Wells's motion to sever offenses as a matter of right.

*Wells*, *slip op*. at 5 (citations omitted). We also held Wells was not entitled to severance

7

pursuant to Ind. Code § 35-34-1-11(a) because

> the facts of each assault in the instant case comprise relevant and germane evidence with respect to the other assaults. Thus, whatever prejudice inures to Wells is not undue. That said, the four assaults were all distinct from one another in terms of time and the identity of the victim. The trier of fact should have no difficulty "distinguish[ing] the evidence and apply[ing] the law intelligently as to each offense." I.C. § 35-34-1-11(a)(3).
>
> Finally, we note that the number of offenses charged - eleven - is not unreasonably high, especially in view of the fact that they relate to only four victims, and thus four incidents. The evidence relative to those assaults is not complex.

*Id*. at 5-6.

Wells' argument in his interlocutory appeal was nearly identical to the argument he now advances. We decline to revisit the issue, as our prior decision established the law of the case. The law of the case doctrine is "a discretionary tool by which appellate courts decline to revisit legal issues already determined on appeal in the same case and on substantially the same facts." *Cutter v. State*, 725 N.E.2d 401, 405 (Ind. 2000), *reh'g denied*. The purpose of the doctrine is to "promote finality and judicial economy," *id*., and it is applied only "to those issues actually considered and decided on appeal." *Id*. (quoting 4A Kenneth M. Stroud, *Indiana Practice* § 12.10 (2d ed. 1990) (emphasis omitted).

However, "[w]hen additional information distinguishes the case factually from the case decided in the first appeal, the law of the case doctrine does not apply." *Parker v. State*, 697 N.E.2d 1265, 1267 (Ind. Ct. App. 1998). Based thereon, Wells argues, "because the focus of the defense at trial was on lack of consent not identity, and because review for abuse of discretion is based upon prejudice at trial and because the evidence at trial was of a

8

different character, the doctrine of law of the case does not apply here." (Br. of Appellant at 13.) Wells also claims the law of the case doctrine does not apply because the trial court engaged in an analysis under the Indiana Rules of Evidence to determine cross-admissibility of the evidence. We analyze each argument separately.

### a. Change in Defense Strategy

Wells argues his defense strategy changed from one of identity during his first request to sever the offenses to one of consent during his trial, and thus the law of the case doctrine does not apply. That change in defense strategy does not alter our earlier decision that the facts reflected a *modus operendi* - that Wells "was motivated to compel prostitutes to perform deviate sexual conduct upon him without him having to pay for it." *Wells*, *slip op*. at 9. Thus, regardless of his defense, severance remained inappropriate. *See Davidson v. State*, 558 N.E.2d 1077 (Ind. 1990) (severance was not appropriate because the two crimes indicated Davidson's *modus operendi* of buying life insurance policies on her children and then drowning them).

### b. Change in Method of Presentation of Evidence

In our opinion on interlocutory appeal, we noted "striking similarities that go beyond mere 'same or similar character' of the offenses[,]" *Wells*, *slip op*. at 5, which similarities might have entitled Wells to severance as a matter of right:

> The assailant in each case targeted women walking on 10th Street in Indianapolis during the early-morning hours. The assaults took place over a period of only one month. All of the victims were prostitutes. The assailant approached each victim in a vehicle that all of the victims described in generally the same terms. With the exception of M.M., the assailant initially proposed to exchange money for sex. In M.M.'s case, the assailant pulled her

9

into the car by force when she leaned into the car after he asked where she was headed. In the other cases, the assailant confined the victim by force or threat of force after luring her into his car. In each case the assailant smoked crack cocaine while he forced the victims to perform oral sex on him. During three of the assaults, he warned the victim not to let his penis come out of her mouth or dire consequences would follow. He instructed the fourth victim, L.H., "to swallow it and to swallow it all and if [she] spit any of it out, he was gonna hurt [her]." Appellant's Appendix at 140. All of the victims described the perpetrator as a heavy-set black male in his forties. Finally, all of the victims but L.H. selected Wells's photo from a photo array. L.H. narrowed it to two photos, including Wells's and another person who apparently looked very similar to Wells, but did not unequivocally identify Wells's photo from the array.

*Id.* In reviewing whether Wells was prejudiced by the trial court's decision, we have the benefit of sworn witness testimony and the jury verdict. But the facts presented in the interlocutory appeal and those now before us are not different - the facts noted above from the interlocutory opinion were presented during trial. Wells argued in the interlocutory appeal that joinder of the offenses would result in prejudice because "the jury's factfinding with regard to each incident will inevitably be tainted by the evidence from the other incidents." *Id.* We responded:

> The latter assertion is correct to some extent, but such is always the case where an individual is tried in the same proceeding upon multiple, separate charges.
> Our Supreme Court addressed essentially this same argument in *Davidson v. State*, 558 N.E.2d 1077 (Ind. 1990). In *Davidson*, the defendant was accused of drowning her two small children in a bathtub in order to collect life insurance proceeds. The two drownings occurred approximately eighteen months apart. The defendant sought severance of the offenses and her request was denied. The Supreme Court affirmed the denial, noting, "while undeniably prejudicial, the facts of each drowning comprise germane and relevant evidence *vis a vis* the other; the prejudice thus was not undue." *Id.* at 1084. Similarly, the facts of each assault in the instant case comprise relevant and germane evidence with respect to the other assaults. Thus, whatever prejudice inures to Wells is not undue. That said, the four assaults were all distinct from one another in terms of time and the identity of the victim. The

10

trier of fact should have no difficulty "distinguish[ing] the evidence and apply[ing] the law intelligently as to each offense." I.C. § 35-34-1-11(a)(3).

Finally, we note that the number of offenses charged -- eleven -- is not unreasonably high, especially in view of the fact that they relate to only four victims, and thus four incidents. The evidence relative to those assaults is not complex.

*Id*. at 5-6. We need not revisit the issue, as Wells has not directed us to anything in the record to suggest any juror had difficulty distinguishing the offenses.[9]

### c.      Trial Court's Additional Analysis of Evidence Rules

As part of its analysis of Wells' motion for severance in the instant action, the trial court examined the cross-admissibility of the evidence of each offense under Indiana Evidence Rules 403 and 404(b). This additional analysis does not convince us that we should not follow the law of the case doctrine; as noted above, the facts and issues presented in the interlocutory appeal do not differ from those before us now. Thus, our prior decision that severance was not required is the law of the case. *See Cutter*, 725 N.E.2d at 405 (law of the case doctrine applied when Cutter did not present facts or issues different from those previously considered and decided as part of Cutter's interlocutory appeal).

### 2.      Appropriateness of Sentence

We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. *Williams v. State*, 891 N.E. 2d 621, 633 (Ind. Ct. App. 2008)

---

[9] Wells notes some prospective jurors' responses to questions regarding their ability to distinguish among the victims and incidents, but neither party directs us to anything in the record to indicate these prospective jurors were selected to serve on the jury. Wells has not demonstrated reversible error. *See Johnson v. State*, 675 N.E.2d 678, 681 n.1 (Ind. 1996) (appellate court will not search the record to find grounds for reversal and will address only those claims properly supported).

11

(citing Ind. Appellate Rule 7(B)). We consider not only the aggravators and mitigators found by the trial court, but also any other factors appearing in the record. *Roney v. State*, 872 N.E.2d 192, 206 (Ind. Ct. App. 2007), *trans. denied.* The appellant bears the burden of demonstrating his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g* 878 N.E.2d 218 (Ind. 2007). The advisory sentence for a Class A felony is thirty years, with a sentencing range between twenty and fifty years. Ind. Code § 35-50-2-4. The advisory sentence for a Class B felony is ten years, with a sentencing range between six and twenty years. Ind. Code § 35-50-2-5. The advisory sentence for a Class C felony is four years with a sentencing range between two and eight years. Ind. Code § 35-50-2-6. The advisory sentence for a class D felony is one and one-half years with a sentencing range between six months and three years. Ind. Code § 35-50-2-7(a).

One factor we consider when determining the appropriateness of a deviation from the advisory sentence is whether there is anything more or less egregious about the offense committed by the defendant that makes it different from the "typical" offense accounted for by the legislature when it set the advisory sentence. *Rich v. State*, 890 N.E.2d 44, 54 (Ind. Ct. App. 2008), *trans. denied*.

Wells argues his sentence is inappropriate based on the nature of the offense because all of the victims were prostitutes and three of the incidents began as consensual encounters.

We disagree. Wells forced four victims to submit to his sexual demands by threats of injury or death. We cannot find Wells' sentence inappropriate based on the nature of the offenses.

When considering the character of the offender, one relevant fact is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of a criminal history in assessing a defendant's character varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id.* Wells argues his sentence is inappropriate based on his character because these offenses were fueled by his addiction to crack cocaine. We disagree. Wells has a lengthy criminal history. As a juvenile, he was waived to adult court and convicted of Class C felony battery. Since then, Wells has been convicted of ten felonies, the most recent involving crimes similar to those now before us. Wells was sentenced to eighty years for those offenses. Wells' sentence is not inappropriate based on his character.

## CONCLUSION

The law of the case doctrine precludes our review of the denial of Wells' motion to sever offenses. In addition, his sentence is not inappropriate based on the nature of the offenses or his character. Accordingly, we affirm.

Affirmed.

KIRSCH, J., and BRADFORD, J., concur.