## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 01 2016, 9:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Gregory L. Fumarolo
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Holly A. Jen,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

November 1, 2016

Court of Appeals Case No.
02A03-1601-CR-172

Appeal from the Allen Superior Court

The Honorable Frances C. Gull, Judge

Trial Court Cause No.
02D05-1405-FB-94

**Robb, Judge.**

# Case Summary and Issue

[1] In June 2014, Holly A. Jen pleaded guilty to six charges, the most serious of which was dealing in methamphetamine, a Class B felony. Her plea was taken under advisement and she was placed in the Allen County Drug Court Program ("Drug Court"). In November 2015, the trial court revoked Jen's participation in Drug Court, accepted her plea, and sentenced her to ten years in the Indiana Department of Correction, with two years suspended to probation. On appeal, Jen raises only the issue of whether the sentence imposed by the trial court is inappropriate in light of the nature of her offenses and her character. Concluding Jen's sentence is not inappropriate, we affirm.

# Facts and Procedural History

[2] On May 22, 2014, officers of the Fort Wayne Police Department executed a search warrant at Jen's residence. In Jen's home, the officers discovered evidence of a "one pot" method for manufacturing methamphetamine. Appellant's Appendix at 15. In addition, the officers discovered bottles located in Jen's kitchen freezer containing a sludge that tested positive for ammonia gas, lithium strips from fragmented lithium batteries, drain cleaner, make-shift bottles used as hydrochloric gas generators, and numerous cold medicine and pseudoephedrine packs, all of which are common precursors used in the manufacturing of methamphetamine. Additional paraphernalia used to introduce drugs into the body was discovered in a purse on the kitchen table and waste from methamphetamine production was found in Jen's trash. Jen

admitted to purchasing the precursors. Jen informed the officers that her two children lived in the home, but Jen's ex-husband had picked them up earlier that day.

[3] The State charged Jen with Count I, dealing in methamphetamine, a Class B felony; Count II, neglect of a dependent, a Class C felony; Count III, maintaining a common nuisance, a Class D felony; Count IV, possession of chemical reagents or precursors with the intent to manufacture, a Class D felony; Count V, dumping controlled substance waste, a Class D felony; and Count VI, possession of paraphernalia, a Class A misdemeanor. On June 16, 2014, Jen pleaded guilty to all charges and entered into an agreement to participate in Drug Court, which concentrates on the rehabilitation of addicts. The State agreed to dismiss all charges if Jen successfully completed Drug Court.

[4] The trial court terminated Jen's Drug Court participation in November of 2015 after Jen tested positive for morphine use on two separate occasions. Consequently, at a sentencing hearing on December 22, 2015, the trial court accepted Jen's guilty plea, entered judgments of conviction on all counts, and sentenced Jen to ten years in the Department of Correction with two of those years suspended to probation.[1] Jen now appeals her sentence.

---

[1] Jen was sentenced to ten years with eight years executed and two years suspended to supervised probation for Count I, four years for Count II, two years for each of Counts III, IV, and V, and one year for Count VI. The sentences on Counts II-VI were ordered to be served concurrently with the sentence on Count I. Jen specifically challenges only the sentence imposed on Count I. *See* Brief of Appellant at 1. However,

# Discussion and Decision

## I. Standard of Review

"The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). The burden rests on the defendant to persuade the court that his or her sentence is inappropriate. *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007). When reviewing a sentence, Rule 7(B) does not require us to be "very deferential" to the trial court's decision, yet due consideration must still be given to that decision. *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008). This court concentrates "less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character." *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (quoting *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002), *trans. denied*), *trans. denied*. Whether we regard a sentence as inappropriate is determined by the "culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224.

---

"[u]ltimately the length of the aggregate sentence and how it is to be served are the issues that matter. . . . [W]hether these are derived from multiple or single counts, involve maximum or minimum sentences, and are concurrent or consecutive is of far less significance than the aggregate term of years." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). We therefore review Jen's sentence holistically, rather than focusing only on Count I.

"The principal role of appellate review should be to attempt to leaven the outliers . . . ." *Id.* at 1225.

## II. Inappropriate Sentence

[6] Jen argues her ten-year sentence with eight years executed and two years suspended to probation is inappropriate and requests it be revised to an eight-year sentence with six years executed and two years suspended to probation.[2]

[7] First, we consider the nature of the offenses. "When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence." *Wells v. State*, 2 N.E.3d 123, 131 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*. Jen received a ten-year sentence, which is the advisory sentence for her most serious offense, Class B felony dealing in methamphetamine. *See* Ind. Code § 35-50-2-5(a) ("A person who commits a Class B felony . . . shall be imprisoned for a fixed term of between six (6) and twenty (20) years, with the advisory sentence being ten (10) years."). Jen pleaded guilty to the six charges against her with the opportunity to have those charges dismissed for successful participation in Drug Court. Only after she failed to comply with the terms and conditions of Drug Court—specifically by doing drugs while in the program—did the trial court sentence Jen to the advisory term for her most serious offense and order the sentences on the

---

[2] Under the sentencing statues in effect at the time Jen committed her crimes, she faces a mandatory minimum executed term of six years because of a prior felony conviction. *See* Ind. Code § 35-50-2-2(b)(1) (2012).

additional offenses to be served concurrently. If Jen's sentence was an outlier, it was on the lenient end of the spectrum as Jen faced a sentence of up to twenty years for Count I alone, with the possibility of being ordered to serve some or all of her other sentences consecutively.

[8] At the time police searched Jen's house, they discovered numerous chemical reagents, precursors, and volatile substances used in the manufacturing of methamphetamine. For example, several bottles containing a sludge that tested positive for ammonia gas were stored in the kitchen freezer intermingled with frozen food. As the State notes, the "one pot" method of manufacturing methamphetamine is extremely dangerous as such practices are prone to cause explosions, and, at the very least, release harmful fumes that may contaminate a home. *See* Brief of Appellee at 13. Jen repeatedly exposed her children to the potential dangers associated with the volatile process of manufacturing methamphetamine. Further, Jen's house was located in a residential area, and her conduct also exposed her neighbors to potential harm. "One factor we consider when determining the appropriateness of a deviation from the advisory sentence is whether there is anything more or less egregious about the offense . . . that makes it different from the 'typical' offense accounted for by the legislature when it set the advisory sentence." *Wells*, 2 N.E.3d at 131. Based upon the reckless manner in which Jen placed her neighbors and especially her children in harm's way, there is certainly nothing about the nature of Jen's offenses that makes them *less* egregious than the typical drug offense so as to warrant a sentence less than the advisory.

[9] Second, we consider the character of the offender. One relevant fact reflecting a defendant's character is the defendant's criminal history. *Id.* The significance of a criminal history varies given the gravity, nature, and number of prior offenses in relation to the current offense. *Id.* Jen does not have an extensive criminal history, but what criminal history she has is nonetheless indicative of her character. Jen has one juvenile adjudication for unauthorized use of a motor vehicle, for which she was placed on probation. In 2003, Jen was sentenced to ten years for dealing in cocaine or a narcotic drug, a Class B felony, with eight years suspended, and she was allowed to serve the executed portion of her sentence on home detention. In 2013, Jen was sentenced to sixty days in the Allen County Jail for operating a vehicle while intoxicated, and the entire sentence was suspended. Jen's past conduct exhibits her repeated disregard for the laws of this state. In addition, she has consistently been offered leniency in sentencing but has continued to commit crimes. While Jen's previous offenses are not numerous and range in gravity, the fact that Jen has been previously convicted of dealing narcotics establishes she understood the severity of her crimes and nonetheless engaged in the current illegal activities.

[10] Beyond Jen's criminal history, she failed to place the interests of her children above her own, both by using drugs and by manufacturing methamphetamine in their home. While it is clear from Jen's long history of substance abuse that she struggles with addiction, she has also had opportunities for treatment and rehabilitation and has failed to benefit from them. For example, Jen had the opportunity to have her charges dismissed in the present case upon successful

completion of Drug Court. Jen's participation in the program was terminated when she continued to abuse drugs despite nearly eighteen months in the program. Consequently, Jen has also failed to persuade us that her character warrants a reduced sentence.

# Conclusion

[11] Jen's sentence is not inappropriate in light of the nature of her offenses and her character. We therefore affirm Jen's sentence of ten years, with eight years executed and two years suspended to supervised probation.

[12] Affirmed.

Mathias, J., and Brown, J., concur.