## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 30 2016, 6:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeremy K. Nix
Matheny, Hahn, Denman & Nix, L.L.P.
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew C. Elzey, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | November 30, 2016 <br><br> Court of Appeals Case No. <br> 35A02-1604-CR-783 <br><br> Appeal from the Huntington <br> Superior Court <br><br> The Honorable Jeffrey R. <br> Heffelfinger, Judge <br><br> Trial Court Cause No. <br> 35D01-1509-F6-212 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Matthew Elzey, Jr., was convicted of theft as a Level 6 felony due to a prior unrelated conviction. The trial court sentenced Elzey to two and one-half years in prison. Elzey raises three issues on appeal: 1) whether the evidence is sufficient to support Elzey's conviction; 2) whether the trial court abused its discretion in sentencing Elzey; and 3) whether Elzey's sentence is inappropriate in light of the nature of the offense and his character. Concluding the evidence is sufficient to support Elzey's conviction, the trial court did not abuse its discretion in sentencing Elzey, and Elzey's sentence is not inappropriate, we affirm.

# Facts and Procedural History

[2] On September 4, 2015, Rebecca Powell, an Asset Protection Manager at the Wal-Mart in Huntington, Indiana, observed a man she later identified as Elzey moving around nervously in the electronics section of the store. Elzey was in an area of the store that Powell knew to be a high theft area. Powell observed Elzey take from a shelf a package containing an FM transmitter that converts music from a device through a car radio. Soon after, a woman joined Elzey in the electronics section and the couple moved into the toy section. The woman was later identified as Brooke Roark, Elzey's girlfriend at the time.

[3] Next, Powell observed Elzey use a key to break the package seal and remove the contents, discarding the empty packaging on a nearby shelf. Powell

continued to monitor Elzey and Roark as they moved to the clearance section, where Powell witnessed Elzey slip the merchandise into his pocket. Powell then contacted Jim Clark, the Wal-Mart Store Manager, while Elzey and Roark moved to the pharmacy section of the store. Elzey and Roark did not make any purchases, but rather proceeded to move past the cash registers, through the store metal detectors, and to the store's automatic doors, which opened for them to step outside. Immediately before Elzey and Roark could exit the building, Powell and Clark stopped Elzey, confronted him with their observations, and requested he return the merchandise to them. Elzey informed Powell and Clark he left the merchandise on the shelf with the packaging.

[4]     Elzey turned around and went back into the store leading Powell and Clark to the electronics section where he claimed to have placed the merchandise. Powell disputed Elzey ever went back to the electronics section, and Elzey then stated the merchandise was in the clearance aisle. Powell asked Elzey to return the merchandise several times during the group's tour of the store. Next, Elzey led the group to the vacuum aisle, where Powell retrieved the empty packaging and once again demanded Elzey return the merchandise. In response, Elzey stated, "I put it over here," transcript at 70, and hurried around the corner toward another aisle that he had not previously occupied. Following Elzey around the corner, Powell observed Elzey pull the merchandise from his pocket, and Powell demanded Elzey hand it to her. Next, Powell took Elzey to the store office and called the Huntington Police Department. Once in the

office, Elzey told Powell he would cooperate and that he did not know why he removed the item from its package and put it in his pocket.

[5] The State charged Elzey with theft, a Class A misdemeanor enhanced to a Level 6 felony due to a prior conviction for theft. On March 3, 2016, the State presented its case against Elzey to a jury. After the jury found Elzey guilty of Class A misdemeanor theft, Elzey admitted he had a prior conviction for theft, and the trial court entered judgment of conviction as a Level 6 felony. The trial court subsequently sentenced Elzey to two and one-half years in the Department of Correction. Elzey now appeals his conviction and sentence.

# Discussion and Decision

## I. Sufficiency of the Evidence

[6] "When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess witness credibility, considering instead only the evidence supporting the conviction and any reasonable inferences that the factfinder may have drawn from that evidence." *Gonzalez v. State*, 908 N.E.2d 338, 340 (Ind. Ct. App. 2009). "Looking to the evidence and reasonable inferences drawn therefrom that support the verdict, we will affirm the conviction if there is probative evidence from which a reasonable jury could find the defendant guilty beyond a reasonable doubt." *Taylor v. State*, 681 N.E.2d 1105, 1110 (Ind. 1997).

Elzey contends the State failed to present sufficient evidence to support his conviction, arguing he did not leave the store premises and did not deprive Wal-Mart of the value or use of the confiscated merchandise. Elzey was charged with and convicted of theft under Indiana Code section 35-43-4-2(a)(1)(C)(i), which states:

> (a) A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class A misdemeanor. However, the offense is:

> (1) a Level 6 felony if:

> * * *

> (C) the person has a prior unrelated conviction for:

> (i) theft under this section . . . .

Further, Indiana Code section 35-43-4-4(c) provides:

> (c) Evidence that a person:

> (1) concealed property displayed or offered for sale or hire, and

> (2) removed the property from any place within the business premises at which it was displayed or offered to a point beyond that at which payment should be made;

> constitutes prima facie evidence of intent to deprive the owner of the property of a part of its value and that the person exerted unauthorized control over the property.

[8] As the State points out, the statute does not require evidence showing Elzey *actually* deprived Wal-Mart of value, but rather only evidence showing Elzey had the *intent* to deprive Wal-Mart of value or use through his unauthorized control over the merchandise. *See* Brief of Appellee at 12. In this instance, the circumstances surrounding Elzey's conduct suggests he intended to remove the merchandise from the store without paying for it.

[9] Elzey's intent was on display from the moment Powell began observing him. Powell noticed Elzey acting nervous in an area of the store that was notorious for attracting thieves. Powell watched Elzey as he selected electronic merchandise, carried the package to a different section of the store, ripped open the packaging, discarded the packaging, and placed the merchandise in his left pocket. Elzey and Roark then walked past the cash registers, past the store metal detectors, and towards the exit where Powell and Clark stopped them. Elzey made no purchases at any time. Only after Powell and Clark stopped Elzey did he lead the group back into the store. Once Elzey led the group through several aisles without producing the merchandise, he entered a new aisle he had not previously occupied and attempted to discretely pull the merchandise from his pocket and place it on a shelf as if he had previously left it there. In the Wal-Mart office, Elzey confessed he did not know why he did it.

[10] The fact that Elzey did not make it through the store's exterior doors is irrelevant because he moved past the point where payment should have been made. In *Chambliss v. State*, 746 N.E.2d 73 (Ind. 2001), the defendant challenged the sufficiency of evidence supporting his theft conviction, arguing

he had neither exited the store nor passed the cash registers and therefore he did not exhibit an intent to commit theft. The Indiana Supreme Court disagreed, holding the jury could reasonably infer the defendant intended to exercise unauthorized control of the property because the defendant concealed the merchandise under his jacket and removed it only after being confronted by a store employee. *Id.* at 78; *see also Hartman v. State*, 164 Ind. App. 356, 359, 328 N.E.2d 445, 447 (1975) (holding there was sufficient evidence to give rise to an inference the defendant exerted unauthorized control for purpose of committing theft when store employees caught defendant with merchandise concealed under his jacket a few feet from the store doors). As in *Chambliss* and *Hartman*, Elzey concealed the merchandise in his pocket and advanced past the point of payment to the store's doors, evidence which we conclude is sufficient to show Elzey intended to deprive Wal-Mart of the value of its merchandise through unauthorized control.

## II. Abuse of Discretion in Sentencing

[11] Next, Elzey argues that the trial court abused its discretion in sentencing him by failing to provide a sentencing statement.

[12] Sentencing decisions fall within the discretion of the trial court and may only be reviewed for abuse of such discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is 'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual

deductions to be drawn therefrom.'" *Id.* (citation omitted). Indiana law requires the trial court to give reasons for the sentence it imposes for a felony conviction when it finds mitigating or aggravating circumstances are present. Ind. Code § 35-38-1-3(3). The sentencing statement "must include a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence." *Anglemyer*, 868 N.E.2d at 490.

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law.

*Id.* at 490-91. "A trial court's consideration of factors may be evidenced in either the written order or in an oral sentencing statement." *Anderson v. State*, 989 N.E.2d 823, 826 (Ind. Ct. App. 2013), *trans. denied*.

[13] Although there is no written sentencing order detailing the trial court's reasons for imposing a two and one-half year sentence here, the trial court's oral statements in sentencing Elzey suffice. At the sentencing hearing, the trial court reviewed Elzey's presentence investigation report, asked Elzey whether it was correct, and then heard arguments about what sentence should be imposed. Elzey did not specifically advance any mitigating circumstances for the trial court's consideration, other than to note he believed his drug addiction had influenced his decision-making and he had a pending petition to revoke

probation in another case which would expose him to up to two years of incarceration. The State noted Elzey's age—twenty-two at the time of sentencing—and his criminal history and response to prior leniency. Following the arguments, the trial court identified Elzey's criminal history as the reason for imposing a two and one-half year sentence when it stated, "The defendant's criminal history indicates he had two (2) adjudications as a juvenile, two (2) prior felony offenses, three (3) petitions to revoke. He was on probation for robbery at the time this was committed." Tr. at 139. A defendant's criminal history is a legitimate aggravating circumstance, *see Phillips v. State*, 869 N.E.2d 512, 515 (Ind. Ct. App. 2007), and the trial court's oral statement provided reasonably detailed reasons supported by the record for imposing the sentence it chose. Such a statement provides an adequate basis for review of the trial court's reasoning in sentencing Elzey and was not an abuse of discretion.

## III. Inappropriate Sentence

[14] Elzey also challenges his sentence under Indiana Appellate Rule 7(B), arguing his sentence itself is inappropriate. Appellate Rule 7(B) provides a "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "The principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The appropriateness of a

sentence turns on the culpability of the defendant, the severity of the crime, the damage done to others, and an array of other factors that might be related to the circumstances giving rise to the sentence. *Id.* at 1224. "We should concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character." *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (quotation omitted), *trans. denied*. "The appellant bears the burden of demonstrating his sentence is inappropriate." *Wells v. State*, 2 N.E.3d 123, 131 (Ind. Ct. App. 2014), *trans. denied.*

[15] First, we consider the nature of Elzey's offense. When reviewing the nature of the offense, a relevant factor is whether there is anything more or less egregious about the offense which distinguishes it from a "typical" offense accounted for by the advisory sentence set by the legislature. *Id.* The sentencing range for a Level 6 felony is six months to two and one-half years, with the advisory sentence being one year. Ind. Code § 35-50-2-7(b). Here, Elzey stole a piece of store merchandise by destroying the packaging and attempting to conceal the item in his pocket. When confronted by Powell and Clark, Elzey lied to the store personnel and attempted to further conceal his criminal act by leading the group on a wild goose chase throughout the store. Elzey also attempted to covertly dump the merchandise. Although Elzey was compliant when taken to the store office, he attempted to deceive the store's personnel numerous times

before admitting his fault. However, the nature of this offense is not overtly better or worse than a "typical" theft offense.

[16] Next, we consider the character of the offender. When considering the character of the offender, one relevant factor is the defendant's criminal history. *Wells*, 2 N.E.3d at 131. It is clear from Elzey's criminal history that he was no stranger to criminal activity. Elzey was adjudicated a juvenile delinquent in 2010 for truancy and incorrigibility. In the same year, Elzey was adjudicated a delinquent for committing an act equivalent to an adult battery charge. Due to his juvenile adjudications, he was placed on probation until the age of twenty-one. In 2012, when he was eighteen, Elzey committed theft, a Class D felony; he was released from probation unsatisfactorily due to committing a new criminal offense. In the same year, Elzey was convicted of robbery, a Class C felony, and sentenced to five years' imprisonment in the Department of Correction with three years suspended to probation. His probation was revoked in 2014 and he was ordered to serve one year of his previously-suspended sentence. In 2015, which still on probation for robbery, he committed the present offense. Elzey's actions expose his disregard for the law and his failure to reform despite any lenient measures previously extended to him. Also, Elzey developed this criminal history over a relatively short period through his adult life, as he was only twenty-two years of age when sentenced for this offense. Given Elzey's criminal history, coupled with the fact that previous leniency has had no effect in curbing his criminal behavior, we conclude a two and one-half year sentence is not inappropriate.

# Conclusion

There was sufficient evidence to support Elzey's theft conviction. As to his sentence, the trial court did not abuse its discretion in sentencing Elzey to two and one-half years, and the sentence is not inappropriate given the nature of the offense and the character of the offender. Therefore, we affirm Elzey's conviction and sentence.

Affirmed.

Mathias, J., and Brown, J., concur.