## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

**FILED**

Mar 07 2017, 9:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Warren Curtis, III, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | March 7, 2017 <br><br> Court of Appeals Case No. <br> 45A04-1610-CR-2360 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Samuel L. Cappas, Judge <br><br> Trial Court Cause No. <br> 45G04-1604-F4-13 |

**Robb, Judge.**

# Case Summary and Issue

[1] Warren Curtis, III, pleaded guilty to burglary, a Level 5 felony, and was sentenced to six years, with five years executed at the Indiana Department of Correction and one year served in community corrections. Curtis appeals his sentence, contending it is inappropriate in light of the nature of the offense and his character. Concluding Curtis' sentence is not inappropriate, we affirm.

# Facts and Procedural History

[2] The agreed factual basis for Curtis' plea to burglary reveals that on March 30, 2016, Curtis was out with a friend and consumed what he thought to be cocaine. The pair then found their way to Octavia Wilson's home. Wilson was a friend of Curtis' girlfriend, Brianna Hodge, and Hodge was at Wilson's home at the time. Without Wilson's permission, Curtis and his friend entered Wilson's home. Curtis assisted his friend in taking Wilson's car keys without her permission, and the friend left in Wilson's car, again without her permission.[1] Based on all that occurred that night, the State charged Curtis

---

[1] The State's statement of facts is more extensive, including information from the probable cause affidavit about all the crimes with which Curtis was charged. The affidavit was attached to the pre-sentence investigation report ("PSI") which Curtis affirmed he had reviewed and was true and accurate. Curtis objects to the State's use of "facts" from the probable cause affidavit as support for its argument that his sentence is not inappropriate. *See* Reply Brief of Appellant at 5-6. A probable cause affidavit is a mere accusation against the defendant and no evidence whatsoever of his guilt. *Anderson v. State*, 396 N.E.2d 960, 962 (Ind. Ct. App. 1979). It is hard to imagine that a defendant, when he states the PSI is accurate during a sentencing hearing after pleading guilty to less than all the charges against him, is intending to concede the truth of any additional allegations contained in a probable cause affidavit the probation officer may have chosen to attach to the PSI. We therefore do not include any additional information from the probable cause affidavit in our recitation of the facts. However, although prior arrests and pending charges not reduced to a conviction do not establish the fact that the defendant committed a criminal offense and may not be considered part of the

with nine crimes under this cause number: burglary, a Level 4 felony; residential entry, two counts of strangulation, battery with moderate bodily injury, intimidation, and auto theft, all Level 6 felonies; domestic battery, a Class A misdemeanor; and criminal mischief, a Class B misdemeanor.[2]

[3] On August 17, 2016, the parties appeared in the trial court and filed a written plea agreement. As part of the plea agreement, the State amended the charging information to add a count of burglary (with intent to commit auto theft), a Level 5 felony, and Curtis agreed to plead guilty to that charge in exchange for the State dismissing the remaining charges, as well as charges pending in two additional cases.[3] Sentencing was left to the trial court's discretion. A factual basis for Curtis' guilty plea was established and the trial court took the plea under advisement.

[4] The parties returned to court on September 13, 2016, for a sentencing hearing. At the outset, Curtis' counsel advised the court:

---

defendant's criminal history, such information may properly be considered in assessing the defendant's character in terms of the risk he may commit another crime. *Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005). To the extent the fullness of the incident reflects on Curtis' character, use of information contained in the probable cause affidavit is permissible and will be considered accordingly.

[2] Three weeks after these charges were filed, the State filed an information in a separate cause number ("F5-42") alleging Curtis committed criminal confinement resulting in bodily injury, a Level 5 felony; criminal confinement, a Level 6 felony; strangulation, a Level 6 felony; and battery resulting in bodily injury, a Class A misdemeanor, all on March 30, 2016, the same date as the original charges. It is unclear exactly what these charges stem from.

[3] These two cases were F5-42, described in footnote 2, *supra*, and "CM-2," a charge of resisting law enforcement alleged to have occurred on April 5, 2016.

> Miss Hodge was one of the victims. Octavia Wilson was the
> other victim. The factual basis for the plea for burglary was Mr.
> Curtis and his codefendant forcibly entered Miss Octavia
> Wilson's home, forcibly took her car keys from her, and left with
> her vehicle. Miss Hodge was a named victim in some of the
> other conduct, but not one of the matters pled to.

Transcript, Volume 2 at 21-22. Hodge then testified on Curtis' behalf, telling the court that although they are not married, she and Curtis have been together for several years. They have three children together and are expecting twins. She explained that although paternity has never been established and support has never been ordered, Curtis works and financially supports her and the children and he is "an active father. . . . He have [sic] the children most of the time because he will be the one watching them while I am working." *Id.* at 23. Hodge acknowledged that when Curtis was younger, he was "just a little on the wild side," but said she has seen him mature since having children. *Id.* at 25. Moreover, she testified his behavior on March 30, 2016, was out of character. Curtis noted for the court that he has only one prior misdemeanor conviction as an adult and advocated for a "sentence in the mitigated range to be suspended or served on probation . . . ." *Id.* at 42.

[5] The State informed the court that Wilson had been notified of the plea agreement and court date but was not in attendance; nonetheless, the State noted it had spoken with her several times and she had been "traumatized" by Curtis' crime. *Id.* at 37. The State argued for a sentence of four years in the Department of Correction with no more than one year suspended to probation.

[6]     Curtis' juvenile history includes arrests in August of 2008; April and August of 2009; March, May, and September of 2011; and September of 2013, resulting in six delinquency adjudications. The allegations of these juvenile cases included auto theft, intimidation, burglary, and multiple instances of resisting law enforcement. Curtis turned eighteen in January of 2014. As an adult, he has one misdemeanor driving conviction, and at the time of sentencing, a pending charge for driving while suspended. He was also arrested in April of 2015 for resisting law enforcement, but that charge was dismissed as part of the plea agreement in this case. In addition, Curtis has committed three rule violations while incarcerated awaiting trial.

[7]     In announcing Curtis' sentence, the trial court found the following aggravating circumstances: Curtis' juvenile history, his disrespect or disdain for authority, that he is need of correctional rehabilitative treatment that can only be provided by a penal facility, the nature and circumstances of his crime, a pattern of violence indicating Curtis is a danger to society, and an "unrelenting" pattern of criminal activity for the last eight years. Appendix of the Appellant, Volume Two at 29-30. In mitigation, the court found Curtis is twenty years of age, he admitted his guilt and saved the time and expense of a trial in exchange for a substantial benefit, and has three dependent children who "may suffer undue hardship" during his incarceration. *Id.* at 30. Finding the aggravators outweighed the mitigators, the trial court sentenced Curtis to six years, the maximum sentence for a Level 5 felony. As to how the sentence was to be served, the trial court stated,

I will suspend – I really didn't want to suspend any of it, but it's better for you to have the dropdown. I will suspend the last year and allow you to serve that on probation. No, I don't think so. I will order you to spend the last year in Community Corrections. Court costs will be entered as a matter of record. That is your sentence. If you ever come back here again, I am going to reject a plea like this and give you the maximum amount I can. . . . State moves to dismiss short cause number CM-2 [and] F5-42, that is granted. Counts I, II, III, IV, V, VI, VII, IX, X in [this] cause [are dismissed]. It should have been more of like fifteen years for you at least.

*Id.* at 48-49. Curtis now appeals his sentence.

# Discussion and Decision

## I. Standard of Review

Curtis requests we exercise our authority to revise his sentence, arguing that the nature of his offense and his character renders a maximum sentence, which should be reserved for the "worst of the worst," inappropriate. *See* Brief of Appellant at 8 (quoting *Hamilton v. State*, 955 N.E.2d 723, 727 (Ind. 2011)). Even when a trial court has imposed a sentence within statutory guidelines, we may independently review a sentence under Indiana Rule of Appellate Procedure 7(B), which provides, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade us his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d

1073, 1080 (Ind. 2006). Though we exercise our independent judgment in assessing an inappropriate sentence claim, sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference. *Hines v. State*, 30 N.E.3d 1216, 1225 (Ind. 2015). We may look to any factors appearing in the record in examining the nature of the offense and the character of the offender. *Spitler v. State*, 908 N.E.2d 694, 696 (Ind. Ct. App. 2009), *trans. denied*. "Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Hines*, 30 N.E.3d at 1225 (citation omitted).

## II. Inappropriate Sentence

[9] The advisory sentence is the starting point the legislature has selected as the appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. Curtis pleaded guilty to a Level 5 felony. The sentencing range for a Level 5 felony is one to six years, with the advisory sentence being three years. Ind. Code § 35-50-2-6(b). The trial court sentenced Curtis to six years. He therefore received the maximum sentence allowed by statute for his offense.[4]

---

[4] The State argues that Curtis' sentence is not inappropriate in part because the facts he admitted at the guilty plea hearing would have supported a conviction of Level 4 residential burglary, and therefore, his six-year sentence "is the advisory sentence for the highest offense that he admitted committing despite being the maximum for the lower Level of non-residential burglary that his deal allowed him to plead guilty to." Brief of Appellee at 13. This argument is not well-taken. At the trial court, the State offered and Curtis accepted a

[10]    First, we consider the nature of Curtis' offense. When reviewing the nature of the offense, a relevant factor is whether there is anything more or less egregious about the offense which distinguishes it from a "typical" offense accounted for by the advisory sentence set by the legislature. *Wells v. State*, 2 N.E.3d 123, 131 (Ind. Ct. App. 2014), *trans. denied*. Curtis pleaded guilty to breaking and entering Wilson's home with intent to commit auto theft. He also admitted that he had taken drugs before the crime, and it appears Wilson was a family friend and was home at the time of the entry, which left her traumatized. Given the personal nature of the intrusion, the facts of the crime to which Curtis pleaded guilty are slightly more egregious than the typical burglary.

[11]    Next, we consider Curtis' character. Curtis contends his actions on the night in question "were not in keeping with his character." Br. of Appellant at 8. He points to his active presence in his children's lives, his financial support of them even though under no court order to do so, his remorse for his actions, and his single misdemeanor conviction as an adult. When considering the character of the offender, one relevant factor is the defendant's criminal history. *Wells*, 2 N.E.3d at 131. As Curtis notes, he has only one adult conviction, a

---

plea agreement to a Level 5 felony. Whatever the reasons for that offer, Curtis is entitled to the benefit of the bargain he and the State made, and we will not weigh his sentence in the manner the State suggests.

In a similar vein, Curtis argues his sentence is inappropriate in part because it appears from the "overall tenor" of the trial court's sentencing statement that it likely gave Curtis the maximum sentence for "improper reasons[,]" including its consideration of the allegations behind all the charges in the current case, even those which were to be dismissed. Brief of Appellant at 9-10. It is true that a trial court should not accept a plea agreement and then punish the defendant at sentencing for the perceived leniency granted to him by the State, *Nybo v. State*, 799 N.E.2d 1146, 1152 (Ind. Ct. App. 2003); however, we are independently reviewing Curtis' sentence rather than assessing the trial court's exercise of its discretion.

misdemeanor driving offense. However, he is only twenty years old. As a juvenile, Curtis had numerous run-ins with the law, including adjudications for auto theft and burglary, the same offenses implicated by this case. *See Harris v. State*, 897 N.E.2d 927, 930 (Ind. 2008) (noting the significance of a defendant's criminal history varies based upon the gravity, nature, and number of prior offenses in relation to the current offense). The trial court correctly observed that despite his limited adult criminal history, Curtis has been regularly committing crimes for the past eight years, including the use of an illegal drug on the night in question. Further, although Curtis would have us believe this crime was an isolated incident, since it occurred, he has been arrested for resisting law enforcement and has been written up for several rule violations while in jail. As for other aspects of Curtis' character, we note that although Hodge indicated he is a good father and financially supports the family, he has never established paternity of the children. Also, Hodge was present on the night Curtis committed this offense and was the victim of one or more of the offenses that were dismissed as part of the plea bargain.

[12] "The question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Helsley v. State*, 43 N.E.3d 225, 228 (Ind. 2015). Deference to the trial court's sentencing decision "should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good

character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). Curtis has not convinced us that the nature of his offense was so innocuous or that his character is so virtuous that a six-year sentence is inappropriate.

# Conclusion

[13] Based on our independent review of the nature of Curtis' offense and his character, we hold his six-year sentence is not inappropriate. The judgment of the trial court is affirmed.

[14] Affirmed.

Kirsch, J., and Barnes, J., concur.